1 | Stephen H. Silver, Bar No. 038241
    shsilver@shslaborlaw.com
2 | Jacob Kalinski, Bar No. 233709
    jkalinski@shslaborlaw.com
3 | **SILVER, HADDEN, SILVER & LEVINE**
1428 Second Street
4 | Santa Monica, CA  90401
Telephone:    310.393.1486
5 | Facsimile:    310.395.5801

6 | Gregg McLean Adam, Bar No. 203436
    gregg@majlabor.com
7 | Jennifer S. Stoughton, Bar No. 238309
    jennifer@majlabor.com
8 | **MESSING ADAM & JASMINE LLP**
235 Montgomery Street, Suite 828
9 | San Francisco, California 94104
Telephone:    415.266.1800
10 | Facsimile:    415.266.1128

11 | Attorneys for Plaintiff **LOS ANGELES POLICE PROTECTIVE LEAGUE**

12

13 | UNITED STATES DISTRICT COURT

14 | CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

15

LOS ANGELES POLICE PROTECTIVE LEAGUE,

           Plaintiff,

     v.

CITY OF LOS ANGELES, a municipal corporation; and CHARLES BECK, in his official capacity as Chief of Police for the City of Los Angeles,

           Defendants.

Case No.

**COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND DECLARATORY RELIEF FOR:**

(1) **VIOLATION OF THE CIVIL RIGHTS ACT, 42 U.S.C. § 1983**

(2) **VIOLATION OF THE 14TH AMENDMENT**

(3) **VIOLATION OF ARTICLE I, SECTION 15 OF THE CALIFORNIA CONSTITUTION**

(4) **VIOLATION OF CALIFORNIA CIVIL CODE SECTION 52.1**

(5) **DECLARATORY RELIEF, 28 U.S.C. § 2201**

Plaintiff Los Angeles Police Protective League ("Plaintiff" or the "League") alleges as follows:

## I.   INTRODUCTION

1.     The League represents all peace officer members of the Los Angeles Police Department (the "LAPD"), as that term is defined by California Penal Code section 830.1, in the ranks of lieutenant and below (collectively "police officers").  These police officers are employed by Defendant City of Los Angeles (the "City"), and they are under the command of the Chief of Police, Defendant Charles Beck (the "Chief of Police" or the "Chief") (collectively, with the City, "Defendants").

2.     The City and the Chief are bound by the Los Angeles City Charter (the "Charter"). The Charter grants the City control over "municipal affairs" and imposes "restrictions and limitations" upon the City.  (Cal. Const. art XI.)

3.     Section 1070(a) of the Charter declares that LAPD officers in the City have a "substantial property right" in their employment, which "shall not be deprived arbitrarily or summarily, nor other than as provided in [Section 1070]."   In other words, LAPD officers represented by the League are considered permanent civil service as that term is used in the City's Civil Service laws.  California courts have recognized that those interests give rise to property interests protected by due process.  (See *Cooper v. City of Los Angeles* (July 16, 2001, B142714, 2nd Dist., Div, 7; *Los Angeles Police Protective League v. City of Los Angeles* (2002) 102 Cal.App.4th 85.)

4.     The due process clauses of the Fourteenth Amendment to the United States Constitution and the California Constitution require the City to provide adequate procedural safeguards before infringing upon LAPD officers' employment-related property interests by firing or suspending them.

5.     Among the procedural safeguards required by both due process clauses is that the ultimate decision-maker(s) in disciplinary proceedings against LAPD officers must be impartial and independent.

6.     The Charter nominally complies with due process requirements by prohibiting Defendants from firing LAPD officers until they receive a full, fair and impartial hearing (Charter

section 1070(a)) from a three-person panel, called a Board of Rights. A Board of Rights has the sole authority to impose suspensions of greater than twenty-two days.

7. The Board of Rights hears evidence against police officers, decides whether officers committed misconduct, and determines the punishment for officers found guilty of misconduct.

8. As presently constituted under the Charter, a Board of Rights is not a neutral and independent decision-maker as due process demand. At the front end, the Chief submits the charges and his recommendation to the Board of Rights. At the back end, two of the three members of a Board of Rights must be high-ranking LAPD officers (i.e., captains and above), who report, through their chain of command, to the Chief of Police.

9. The high-ranking officers on a Board of Rights owe their positions and possible promotion to the Chief. On its face this presents a structural conflict, with department Board of Rights members under inherent pressure to find officers prosecuted under the Chief's authority guilty, and to impose the Chief's recommended punishment. And in practice, as further alleged below, the Chief of Police's influence has compromised and corrupted Board of Rights procedures such as to deny Plaintiff's members their civil rights, including to due process.

## II. THE PARTIES

10. Plaintiff the League is an employee organization, as defined in the California Government Code sections 3500 *et seq*., and the exclusive representative of LAPD officers below the rank of lieutenant, concerning the terms and conditions of their employment, including disciplinary procedures. Plaintiff has associational standing to assert the constitutional and statutory claims of its members.

11. Defendant City is a charter city organized and existing under the laws of the State of California. The City is located within the Central District of California.

12. Defendant Charles Beck is the Chief of Police for the City, charged with the supervision, administration, and management of the LAPD and its officers. On information and belief, the Chief resides within the Central District of California. He is sued solely in his official capacity.

### III.  JURISDICTION AND VENUE

13.    The League asserts claims arising under the laws and Constitution of the United States, including the Civil Rights Act, 42 U.S.C. § 1983, the Fourteenth Amendment, and the Declaratory Judgment Act, 28 U.S.C. § 2201—which gives this Court jurisdiction pursuant to 28 U.S.C. § 1331

14.    This Court has personal jurisdiction over the City because it is incorporated and located within the State of California.

15.    This Court has personal jurisdiction over the Chief because he is domiciled within the State of California.

16.    Venue for this action properly lies in this district pursuant to 28 U.S.C. §1391 because all of the Parties reside within this judicial district, and the events or omissions giving rise to the claims occurred within this judicial district.

### IV.  FACTUAL ALLEGATIONS

17.    The League has the right and responsibility to diligently protect the rights of all LAPD officers up to the rank of lieutenant.

18.    Police officers accused of misconduct are entitled to several safeguards to protect them against punishments that might be imposed in response to a meritless accusations.

19.    Among these protections, the Los Angeles City Charter specifies that no officer may be fired, or suspended for more than twenty-two days, unless the officer's case has first been heard by a three-person Board of Rights.  Every Board of Rights is specially constituted to hear the charges brought against the officer, and each officer facing disciplinary proceedings is entitled to an independent three-person panel.

20.    Under the Charter, a Board of Rights is supposed to independently determine whether the officer engaged in misconduct.  It is also supposed to determine the penalty for an officer's misconduct.

21.    The Chief does not have the authority to countermand a Board of Rights' finding that an officer engaged or did not engage in misconduct.  Nor does the Chief have the power to increase the penalty imposed by a Board of Rights.  The Chief's sole remaining power, once a Board of

Rights makes a determination, is to *reduce* a penalty in the unlikely event that a Board of Rights imposes a punishment greater than that recommended by the Chief.

22.    The Charter dictates, in Section 1070(h), that a Board of Rights "shall be composed of two officers of the rank of captain or above and an individual who is not a member of the department (the civilian member)."  It is this provision that Plaintiff alleges violates its members due process rights.

23.    Out of more than 9,000 officers in the LAPD, approximately 100 officers are of sufficient rank, *i.e.*, "captains or above," to sit on a Board of Rights (the "Board-Eligible Officers"). Different Boards of Rights have different compositions, but they all draw their non-civilian members from the same limited pool of Board-Eligible Officers.

24.    By reason of their positions, managerial responsibilities and obligations to the Chief of Police—who is their commanding officer—these Board-Eligible Officers have regular contact with the Chief of Police and other high-ranking members of his command staff.  The Chief makes all promotions to the rank of "captain or above," and he has ultimate control over future assignments, responsibilities, and promotions.

25.    By design, Board-Eligible Officers owe their present positions and future prospects to the Chief.  Consequently, the "two captains or above" requirement of Section 1070(h) of the City Charter inexorably leads to disciplinary proceedings against police officers accused of misconduct which are not fair and impartial because two-thirds of the Board of Rights are controlled by and owe allegiance to a Chief of Police whose is proposing the disciplinary action under review.

26.    The Board of Rights only hears complaints against an officer if the Chief has already concluded that an officer is guilty of the allegations against him.  (L.A. Charter § 1070(a).)  Once the Board of Rights convenes, the Chief remains intimately involved in the proceedings: he supervises the officers who present evidence (who are effectively the prosecution) against officers appearing before a Board of Rights.  The Chief also recommends punishments to the Board of Rights.

27. Accordingly, when a Board of Rights gathers to hear the evidence against an officer, the two Board-Eligible Officers know that the Chief believes that the officer is guilty of misconduct and significant punishment—usually termination—should be imposed.

28. In almost all cases, a Board of Rights also knows that the Chief has asked for a suspension of at least twenty-two days. In practice, the Chief rarely proposes punishment greater than a twenty-two day suspension but short of termination, so Board of Rights members typically know that the Chief seeks the termination of almost every officer appearing before a Board of Rights.

29. The inherent pressure built into the Board of Rights system for Board-Eligible Officers to find an officer guilty of misconduct—and to impose a specific punishment, which is almost always termination—infringes upon a police officer's due process right to a neutral decision-maker in disciplinary proceedings which could end his or her career.

30. The concern that the neutrality of the Board of Rights process is severely compromised is not theoretical. Several captains have alleged that they: were pressured to convict officers sent to a Board of Rights; suffered retaliation after disagreeing with the Chief during Board of Rights proceedings; and/or heard other Board-Eligible Officers indicate their intent to find an officer guilty simply because the Chief wanted them to do so.

31. These extraordinary allegation by captains have appeared in four separate whistleblower and retaliation actions against the City and the Chief. *See Whittingham v. City of Los Angeles*, Case No. BC542732, Superior Court for the County of Los Angeles (filed April 14, 2014); *Ruiz v. City of Los Angeles*, Case No. BC554102, Superior Court for the County of Los Angeles (filed August 8, 2014); *Carranza v. City of Los Angeles*, Case No. BC561557, Superior Court for the County of Los Angeles (filed October 22, 2014); *Justice v. City of Los Angeles*, Case No. BC581567, Superior Court for the County of Los Angeles (filed May 13, 2015) (attached hereto as Exhibits 1 – 4, respectively).

32. Among other things, the captains alleged in their complaints:

(a)     that shortly after ruling against the Chief, one was "cautioned" by a superior "that one of the things Chief Beck looks at when deciding to upgrade captains is their findings during a [Board of Rights]," (Ex. 1 at ¶ 11);

(b)     that after rejecting the Chief's request to terminate an officer, one was told the "Chief of Police Charlie Beck [was] 'disappointed' in the decision not to terminate," and then told that he "would be receiving 'training' . . . on 'handling' Boards," (Exhibit 2 at ¶ 18);

(c)     that one was told "on behalf of Chief Beck" that "when we send someone to a Board of Rights, we expect termination," (Exhibit 3 at ¶ 12); and

(d)     that it is "common practice to send officers that are acquitted in a [Board of Rights] to be reassigned to the hearing officer's division as punishment," (Exhibit 4 at ¶ 15).

33.     Far from the "fair and impartial" process intended by Charter section 1070(a) and demanded by due process, an inherent structural conflict of interest in the Board of Rights proceedings is created by Charter section (h), on its face and in practice, and the two Board-Eligible Officers who sit on a Board of Rights cannot reasonably act in a fair and impartial capacity.  As a result, police officers accused of misconduct are deprived of the neutral decision-makers to which they are entitled under due process jurisprudence.

34.     The Charter provisions mandating the use of these two Board-Eligible Officers, found in Section 1070(h) of the Charter, must therefore be found unconstitutional.[1]

### FIRST CAUSE OF ACTION

### *Violation of the Civil Rights Act, 42 U.S.C. § 1983*

35.     The League repeats and realleges each and every allegation in paragraphs 1 through 34 as if fully set forth herein.

---

[1] If any section or subsection of the Charter "is for any reason held to be unconstitutional or otherwise invalid, that decision shall not affect the validity of the remaining portions of this Charter."  L.A. Charter § 107.  Thus, while Section 1070(h) is unconstitutional, the remaining provisions of Section 1070 may remain unchanged.

36.     Pursuant to Section 1070 of the Los Angeles City Charter, disciplinary proceedings against LAPD officers are overseen by a Board of Rights whenever those proceedings might lead to either termination or a suspension exceeding twenty-two days.

37.     Section 1070(h) of the Charter mandates that any such Board of Rights be comprised of individuals who, by virtue of their positions within the LAPD, are inherently influenced by the Chief of Police and cannot act as neutral and independent decision-makers.  Acting under color or law, Defendants enforce and uphold Section 1070(h) of the Charter in a manner which violates Plaintiff's members' civil rights, including to due process.  Section 1070(h) of the Charter therefore violates the Fourteenth Amendment Due Process rights of LAPD officers.

38.     Without appropriate relief, LAPD officers will continue to suffer adverse employment decisions following unconstitutional hearings.

39.     As a result of the foregoing, the League is entitled to injunctive relief under 42 U.S.C. § 1983, as described below.

WHEREFORE, plaintiff prays for relief, as hereinafter set forth.

### SECOND CAUSE OF ACTION

***Violation of the Fourteenth Amendment's Due Process Clause***

40.     The League repeats and realleges each and every allegation in paragraphs 1 through 39 as if fully set forth herein.

41.     Pursuant to Section 1070 of the Los Angeles City Charter, disciplinary proceedings against LAPD officers are overseen by a Board of Rights whenever those proceedings might lead to either termination or a suspension exceeding twenty-two days.

42.     Section 1070(h) of the Charter mandates that any such Board of Rights be comprised of individuals who, by virtue of their positions within the LAPD, are inherently influenced by the Chief of Police and cannot act as neutral and independent decision-makers.  Section 1070(h) of the Charter therefore violates the Fourteenth Amendment Due Process rights of LAPD officers.

43.     Nevertheless, Defendants enforce and uphold Section 1070(h) of the Charter.

44.     Without appropriate relief, LAPD officers will continue to suffer adverse employment decisions following unconstitutional hearings.

45.     As a result of the foregoing, the League is entitled to injunctive relief under the Fourteenth Amendment.

WHEREFORE, plaintiff prays for relief, as hereinafter set forth.

### THIRD CAUSE OF ACTION

*Violation of the article 1, section 15 of the California Constitution (due process)*

46.     The League repeats and realleges each and every allegation in paragraphs 1 through 45 as if fully set forth herein.

47.     Based on the conduct alleged in this complaint, Defendants acted under color of law to deprive Plaintiff's members of certain constitutionally-protected rights including, but not limited to, the right to procedural due process under article 1, section 15 of the California Constitution by providing disciplinary procedures under Section 1070 of the Los Angeles City Charter that were not fair and impartial.

48.     Without appropriate relief, LAPD officers will continue to suffer adverse employment decisions following unconstitutional hearings.

49.     As a result of the foregoing, the League is entitled to injunctive relief to protect LAPD officers' rights under article 1, section 15 of the California Constitution.

WHEREFORE, plaintiff prays for relief, as hereinafter set forth.

### FOURTH CAUSE OF ACTION

*Violation of California Civil Code section 52.1*

50.     The League repeats and realleges each and every allegation in paragraphs 1 through 49 as if fully set forth herein.

51.     Based on the conduct alleged in this complaint, Defendants violated California Civil Code Section 52.1, in that they interfered, including through threats, intimidation or coercion, with LAPD officers' exercise of their civil rights, as enumerated herein, through violating their right to a fair and impartial disciplinary proceeding for determination of their property interests.

52.     As a direct and proximate result of Defendants' violation of Civil Code Section 52.1, LAPD officers suffered violation of their constitutional rights, and suffered damages as set forth herein.

53. Plaintiff is entitled to injunctive relief and an award of their reasonable attorney's fees pursuant to Civil Code Section 52.1(h).

WHEREFORE, plaintiff prays for relief, as hereinafter set forth.

### FIFTH CAUSE OF ACTION

### *Declaratory Judgment, 28 U.S.C. § 2201*

54. The League repeats and realleges each and every allegation in paragraphs 1 through 57as if fully set forth herein.

55. The City and the Chief continue to enforce Section 1070(h) of the Los Angeles Charter, an unconstitutional provision governing the composition of any Board of Rights.

56. As a result, the League's members are routinely deprived of their constitutional right to a neutral decision-maker. Without appropriate relief, these members will continue to suffer adverse employment decisions following unconstitutionally biased hearings.

57. Accordingly, there exists a justiciable controversy between the Parties with respect to the outcome, permanency, and future handling of Board of Rights hearings.

58. By reason of the foregoing, the League requests a declaration that Section 1070(h) of the Los Angeles City Charter violates the Fourteenth Amendment to the United States Constitution.

WHEREFORE, plaintiff prays for relief, as hereinafter set forth.

### V.  PRAYER FOR RELIEF

For the foregoing reasons, the League demands judgment against Defendants as follows:

(i) On the first and second causes of action, pursuant to 42 U.S.C. § 1983, a judgment awarding the League injunctive relief and ordering that: (1) Los Angeles Charter Section 1070(h) violates the Fourteenth Amendment to the United States Constitution; (2) all matters heard by a Board of Rights during the pendency of this case are deemed void; (3) all matters pending before a Board of Rights at the conclusion of this case are stayed, pending reformation of the Board of Rights process; and (4) good cause exists under Los Angeles Charter Section 1070 (t) for a rehearing.

(ii) On the third and fourth causes of action, for violation of the article 1, Section 15 of the California Constitution and California Civil Code section 52.1, a judgment awarding the League

expenses, costs and disbursements, and injunctive relief, and ordering that: (1) Los Angeles Charter Section 1070(h) violates article 1, Section 15 of the California Constitution and California Civil Code section 52.1; (2) all matters heard by a Board of Rights during the pendency of this case are deemed void; (3) all matters pending before a Board of Rights at the conclusion of this case are stayed, pending reformation of the Board of Rights process; and (4) good cause exists under Los Angeles Charter Section 1070 (t) for a rehearing.

(iii)    Attorneys' fees, costs, expenses pursuant to 42 U.S.C. § 1988, California Code of Civil Procedure section 1021.5, California Government Code section 800 or any other basis.

(iv)    For violation of California Civil Code 52.1, statutory damages and reasonable attorneys' fees.

(v)    On the Third Cause of Action, pursuant to 28 U.S.C. § 2201, a judgment finding that that Section 1070(h) of the Los Angeles City Charter violates the Fourteenth Amendment to the United States Constitution and article 1, Section 15 of the California Constitution.

(vi)    And awarding the League such other and further relief as the Court deems just, equitable and proper.

## JURY DEMAND

The League herein demands a trial by jury of all triable issues.

Dated:  May 19, 2016                    SILVER, HADDEN, SILVER & LEVINE


By _____/s/ Jacob Kalinski_____
   Stephen H. Silver
   Jacob Kalinski


MESSING ADAM & JASMINE LLP


By _____/s/ Gregg McLean Adam_____
   Gregg McLean Adam
   Jennifer S. Stoughton

   Attorneys for Attorneys for Plaintiff Los Angeles
   Police Protective League