MICHAEL N. FEUER, City Attorney (SBN 111529x)
JAMES P. CLARK, Chief Deputy City Attorney (SBN 64780)
james.p.clark@lacity.org
THOMAS H. PETERS, Chief Assistant City Attorney (SBN 163383)
thom.peters@lacity.org
WAYNE H. SONG, Supervising City Attorney (SBN 185473)
wayne.song@lacity.org
BENJAMIN CHAPMAN, Deputy City Attorney (SBN 234436)
benjamin.chapman@lacity.org
200 North Main Street, 6th Floor, City Hall East
Los Angeles, California 90012
Telephone Number:  213.978.7556
Facsimile Number: 213.978.8214

Attorneys for Defendants,
CITY OF LOS ANGELES and CHARLES BECK

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| LOS ANGELES POLICE PROTECTIVE LEAGUE,<br><br>            Plaintiff,<br><br>vs.<br><br>CITY OF LOS ANGELES, a municipal corporation; and CHARLES BECK, in his official capacity as Chief of Police for the City of Los Angeles,<br>            Defendants. | Case No.: 16-cv-03462-JFW-RAO<br><br>**DEFENDANTS CITY OF LOS ANGELES AND CHARLES BECK'S NOTICE OF MOTION AND MOTION TO DISMISS THE FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:      August 29, 2016<br>Time:      1:30 p.m.<br>Ctrm:      16 – Spring St. Floor<br>Judge:    Hon. John F. Walter<br><br>Action Filed: 5/19/2016 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on August 29, 2016, at 1:30 p.m., or as soon thereafter as this motion may be heard in Courtroom 16 – Spring St. Floor of the above-titled Court, located at 312 North Spring Street, Los Angeles, California 90012, defendants City of Los Angeles and Los Angeles Police Department Chief of Police Charles Beck will and hereby do move this Court for an order dismissing Plaintiff's First Amended Complaint ("FAC") for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the accompanying Request for Judicial Notice, the accompanying Declaration of Benjamin Chapman, all records and papers on file in this action, and any evidence or oral argument offered at any hearing on this motion. This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on July 21, 2016.

Dated:  July 29, 2016

OFFICE OF THE CITY ATTORNEY OF LOS ANGELES

By:
　　  */s/ Benjamin Chapman*
　　  Benjamin Chapman

　　  Attorneys for Defendants
　　  CITY OF LOS ANGELES and CHARLES BECK

# **Table of Contents**

TABLE OF AUTHORITIES ............................................................ ii

MEMORANDUM OF POINTS AND AUTHORITIES ............................1

I.    INTRODUCTION ...........................................................................1

II.   FACTUAL BACKGROUND ...............................................................2

III.  LEGAL STANDARD .......................................................................5

IV.   ARGUMENT ................................................................................6

    A.   Plaintiff's First, Second, And Third Causes Of Action For Due Process Violations Fail As A Matter Of Law...................................6

        1.   Plaintiff's due process claims fail as a matter of law...............6

        2.   Plaintiff's due process claims are directly contradicted by the facts set forth in the exhibits to the FAC. ................................13

        3.   Plaintiff's due process challenge to Section 1070(b)(1) of the Charter is fails as a matter of law. ......................................14

    B.   Plaintiff's Fourth Cause of Action For Alleged Violations Of California Civil Code § 52.1 Fails As A Matter Of Law. ...............16

    C.   Plaintiff's Fifth Cause of Action For Declaratory Relief Fails As A Matter Of Law. ........................................................19

    D.   Plaintiff's Sixth And Seventh Causes Of Action For Violations Of California Government Code § 3304(b) Are Meritless. ..............20

    E.   Plaintiff's Eighth Cause of Action Under California Code Of Civil Procedure § 1085 Fails As A Matter Of Law. ........................23

    F.   All Claims Against Chief Beck Should Be Dismissed With Prejudice. .......23

V.    CONCLUSION.............................................................................24

## <u>Table of Authorities</u>

**Page(s)**

**Cases**

*Abel v. City of Algona*,
348 Fed. Appx. 313 (9th Cir. 2009)..................................................................16

*Albright v. Oliver*,
510 U.S. 266 (1994).............................................................................6, 7

*Allen v. City of Sacramento*,
234 Cal. App. 4th 41 (Cal. Ct. App. 2015)....................................................17

*Anderson v. Dolce*,
653 F. Supp. 1556 (S.D.N.Y. 1987) .............................................................13

*Archuleta v. Cnty. of L.A.*, CV 15-4695 DMG (SS),
2015 U.S. Dist. LEXIS 97761 (C.D. Cal. July 27, 2015)...........................24

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..................................................................5, 6, 7, 15

*Azul-Pacifico v. City of L.A.*,
973 F.2d 704 (9th Cir. 1992) ....................................................................7

*Baffert v. Cal. Horse Racing Bd.*,
332 F.3d 613 (9th Cir. 2003) ....................................................................3

*Bano v. Union Carbide Corp.*,
361 F.3d 696 (2d Cir. 2004) .....................................................................19

*Bay Area Rapid Transit Dist. v. Superior Court*,
38 Cal. App. 4th 141 (Cal. Ct. App. 1995)....................................................17

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)...............................................................................6, 15

*Biderman v. Nw. Tr. Servs., Inc.*, CV 15-02283-AB (JCx),
2015 U.S. Dist. LEXIS 82221 (C.D. Cal. June 24, 2015)...........................20

*Binkley v. City of Long Beach*,
16 Cal. App. 4th 1795 (Cal. Ct. App. 1993)...............................................20

*Brown v. City of Los Angeles*,
   102 Cal. App. 4th 155 (Cal. Ct. App. 2002) ..........................................................*passim*

*Calop Bus. Sys. v. City of L.A.*,
   984 F. Supp. 2d 981 (C.D. Cal. 2013) ..........................................................................7

*Campbell v. Feld Entm't, Inc.*,
   75 F. Supp. 3d 1193, 1212 (N.D. Cal. 2014) ...............................................................17

*Crupi v. City of L.A.*,
   219 Cal. App. 3d 1111 (Cal. Ct. App. 1990) ..........................................................22, 23

*Ctr. For Bio-Ethical Reform, Inc. v. Los Angeles Cnty. Sheriff Dep't*,
   533 F.3d 780 (9th Cir. 2008) ......................................................................................24

*Daniels-Hall v. Nat'l Educ. Ass'n*,
   629 F.3d 992 (9th Cir. 2010) ......................................................................................14

*David v. City of L.A.*,
   307 F.3d 1143 (9th Cir. 2002), *rev'd on other grounds*, 538 U.S. 715
   (2003) .....................................................................................................................12, 13

*Dias v. Elique*,
   436 F.3d 1125 (9th Cir. 2006) ....................................................................................16

*Ducre v. Veolia Transp.*, CV 10-02358 MMM (AJWx),
   2011 U.S. Dist. LEXIS 158897 (C.D. Cal. Mar. 29, 2011).........................................22

*e.g.*, *Schaldach v. Dignity Health*, 2:12-cv-02492-MCE-KJN,
   2013 U.S. Dist. LEXIS 73553 (E.D. Cal. May 23, 2013) ...........................................18

*Emp'rs Ins. of Wausau v. Granite St. Ins. Co.*,
   330 F.3d 1214 (9th Cir. 2003) ....................................................................................22

*Golt v. City of L.A.*,
   214 Fed. Appx. 708 (9th Cir. 2006).............................................................................10

*Gorman v. Wells Fargo Bank, N.A.*, No. CV 15-194-JFW (JCx),
   2015 U.S. Dist. LEXIS 54964 (C.D. Cal. Apr. 21, 2015) ............................5, 6, 19, 24

*Haas v. Cnty. of San Bernardino*,
   27 Cal. 4th 1017 (Cal. 2002) ........................................................................................9

*Hatfield v. City of L.A.*, B208526, 2009 Cal. App........................................................22, 23

*Herrera v. Wells Fargo Bank, N.A.*, CV 15-4726-GW (FFMx),
2015 U.S. Dist. LEXIS 104810 (C.D. Cal. Aug. 6, 2015) .........................................20

*Hill v. Cnty. of Sacramento*,
466 Fed. Appx. 577 (9th Cir. 2012).................................................................23

*Holcomb v. City of L.A.*,
210 Cal. App. 3d 1560 (Cal. Ct. App. 1989) .............................................................23

*Indep. Living Ctr. of S. Cal. v. Maxwell-Jolly*, 2:08-cv-03315-CAS
(MANx),
2015 U.S. Dist. LEXIS 89371 (C.D. Cal. July 6, 2015)..............................................23

*Jackson v. City of L.A.*,
69 Cal. App. 4th 769 (Cal. Ct. App. 1999)..................................................................23

*Jones v. Kmart Corp.*,
17 Cal. 4th 329 (Cal. 1998)...............................................................................16

*Kassahun v. JPMorgan Chase Nat'l Corp. Servs.*, SACV
11-1956 .................................................................................................................19

*L.A. Police Protective League v. City of L.A.*,
102 Cal. App. 4th 85 (Cal. Ct. App. 2002) ..................................................................8

*Lake Mohave Boat Owners Ass'n v. Nat'l Park Serv.*,
78 F.3d 1360 (9th Cir. 1995) ..................................................................................19

*Lenhoff Enters., Inc. v. United Talent Agency, Inc.*, CV 15-01086-BRO
(FFMx),
2015 U.S. Dist. LEXIS 150141 (C.D. Cal. Sept. 18, 2015) ......................................20

*Lopez v. Cnty. of L.A.*, CV 15-01745 MMM (MANx),
2015 U.S. Dist. LEXIS 82918 (C.D. Cal. June 25, 2015)...........................................17

*Marcello v. Bonds*,
349 U.S. 302 (1955)..........................................................................9, 12, 13

*Morongo Band of Mission Indians v. State Water Res. Control Bd.*,
45 Cal. 4th 731 (2009) .............................................................................................7

*Nozzi v. Hous. Auth. of the City of L.A.*,
  425 Fed. Appx. 539 (9th Cir. 2011)..................................................................7

*Otto v. L.A. Unified Sch. Dist.*,
  89 Cal. App. 4th 985 (Cal. Ct. App. 2001)....................................................21

*Palazzolo v. Sonne*, C 03-2901 JF (PVT),
  2008 U.S. Dist. LEXIS 87342 (N.D. Cal. Oct. 16, 2008) ...........................16

*Quality Towing, Inc. v. Jackson*, 15-cv-01756-PSG,
  2016 U.S. Dist. LEXIS 25473 (N.D. Cal. Feb. 29, 2016) ...........................18

*Qualls v. Cook*,
  245 Fed. Appx. 624 (9th Cir. 2007)...............................................................15

*San Francisco Apt. Ass'n v. City & Cnty. of San Francisco*,
  142 F. Supp. 3d 910, 917 ...............................................................................23

*Schulte v. City of Sacramento*, Civ. S-05-1812 FCD JFM,
  2006 U.S. Dist. LEXIS 4971 (E.D. Cal. Feb. 9, 2006) ...............................18

*Schwartz v. U.S. Bank*, CV 11-08754 MMM (JCG),
  2012 U.S. Dist. LEXIS 189868 (C.D. Cal. Aug. 3, 2012) ..........................20

*SEIU, Local 721 v. Cnty. of Riverside*, EDCV 09-00561-VAP (JTLx),
  2011 U.S. Dist. LEXIS 46008 (C.D. Cal. Apr. 27, 2011) ...........................19

*Silver v. U.S Postal Serv.*,
  951 F.2d 1033 (9th Cir. 1991) ..........................................................11, 12, 13

*Spokane Cnty. Legal Servs., Inc. v. Legal Servs. Corp.*,
  614 F.2d 662 (9th Cir. 1980) .................................................................12, 13

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001) ..........................................................................15

*Tonkovich v. Kansas Bd. of Regents*,
  159 F.3d 504 (10th Cir. 1998) ........................................................................13

*U.S. v. Garcia-Martinez*,
  228 F.3d 956 (9th Cir. 2000) ..........................................................................13

*U.S. v. Healy Tibbitts Constr. Co.*,
  713 F.2d 1469 (9th Cir. 1983) ........................................................................12

*Van Harken v. City of Chicago*,
  103 F.3d 1346 (7th Cir. 1997) .................................................. 11

*White v. Cnty. of Sacramento*,
  31 Cal. 3d 676 (Cal. 1982) ......................................................... 21

*Withrow v. Larkin*,
  421 U.S. 35 (1975) ............................................................... *passim*

*Woo v. Superior Court*,
  53 Cal. App. 4th 967 (2000) ...................................................... 2

**Statutes**

28 U.S.C. § 2201 ....................................................................... 19

42 U.S.C. § 1983 ........................................................... 4, 6, 7, 16

Cal. Civ. Code § 52.1(a) ........................................................ 18

Cal. Civ. Code § 52.1(b) ........................................................ 17

Cal. Civ. Code § 52.1(j) ......................................................... 18

California Civil Code § 52.1 ............................................. *passim*

California Code of Civil Procedure § 1060 ....................... 19, 20

California Code of Civil Procedure § 1085 ....................... 5, 23

California Code of Civil Procedure § 1094.5 ......................... 3

California Government Code § 3304(b) ........................... *passim*

California Government Code § 3304(d)(1) .......................... 2, 3

California Government Code § 3309.5 .............................. 5, 21

Gov't Code §§ 3300 et seq. ........................................................ 20

Gov't Code § 3303 ............................................................. 21, 22

**Other Authorities**

Cal. Const. art I, § 7 ................................................................. 5, 7

Article I, § 15 of the California Constitution ................................................................4, 5

Federal Rule of Civil Procedure 12(b)(6) ...........................................................5

Federal Rule of Evidence 201 ...........................................................6

Section 1070(h) of the Los Angeles City Charter ......................................*passim*

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendants City of Los Angeles (the "City") and Los Angeles Police Department ("LAPD") Chief of Police Charles Beck ("Chief Beck") file this motion to dismiss Plaintiff Los Angeles Police Protective League's First Amended Complaint ("FAC").

## I.   INTRODUCTION

This lawsuit presents a single legal question:  Does Section 1070(h) of the Los Angeles City Charter ("Charter"), by requiring that two police officers holding the rank of captain or above (in addition to a civilian member) serve as hearing officers to adjudicate police disciplinary proceedings, violate the due process rights of accused police officers under the United States and California Constitutions?  The answer is no.

In *Brown v. City of Los Angeles*, 102 Cal. App. 4th 155 (Cal. App. 2d Dist. 2002), the California Court of Appeal—the only court to consider this issue to date—found that the City's use of officers holding the rank of captain or above as adjudicators in administrative proceedings involving accused police officers does not violate due process under the either the United States Constitution or the California Constitution. *Id*. at 178-79.  And the Ninth Circuit Court of Appeals, following established United States Supreme Court precedent, has repeatedly rejected challenges to similar proceedings, holding that due process is not violated when the hearing officers overseeing administrative proceedings work in the same department that files the charges or prosecutes the proceedings.  Indeed, this process is widely used by agencies and departments nationwide. *See*, *e.g.*, *Withrow v. Larkin*, 421 U.S. 35, 56-57 (1975) (noting it is "very typical for the members of administrative agencies to review the results of investigations, to approve the filing of charges or formal complaints instituting enforcement proceedings, and then to participate in the ensuing hearings.  This mode of procedure … does not violate due process of law.").  Accordingly, Plaintiff's due process claims fail as a matter of law.  Moreover, Plaintiff's state law claims are also meritless.  Accordingly, the FAC should be dismissed with prejudice.

## II.   FACTUAL BACKGROUND

Plaintiff Los Angeles Police Protective League "represents all peace officer members" of the LAPD with the rank of lieutenant and below.  (FAC, ¶ 1.)  Plaintiff purports to have "associational standing to assert the constitutional and statutory claims of its members." (*Id*. ¶ 10.)  Defendant City is a charter city. (*Id*. ¶ 11.)  Defendant Chief Beck, who is "sued solely in his official capacity," is the Chief of Police of the LAPD. (*Id*. ¶ 12.)  The City and the Chief of Police are "bound by the Los Angeles City Charter" (*id*. ¶ 2), which is approved by the voters of the City.  *Woo v. Superior Court*, 53 Cal. App. 4th 967, 971 (2000).

Section 1070 of the Charter generally provides for a hearing before an administrative tribunal, known as a Board of Rights, before discipline may be imposed against a police officer.  (Charter, § 1070(a); FAC, ¶ 6.)[1]  Within five days of service of the charges against the police officer, the Chief of Police must file with the Board of Police Commissioners a copy of the verified written complaint that contains a statement in clear and concise language of the facts constituting the charges against the police officer.  (*Id*. § 1070(d).)  The service of charges against the police officer contains the "proposed discipline" as required under California Government Code § 3304(d)(1). Pending a hearing before a Board of Rights, the Chief of Police "may temporarily relieve from duty any member …, except that a member so relieved shall not suffer a loss of compensation until 30 days after the date on which the member was served with the charge or charges…."  (Charter, § 1070(b)(1).)  "There shall be a calendar priority for Board of Rights hearings when a member is subject to relief from duty pending a hearing."  (*Id*.)

A hearing before the Board of Rights is "a *de novo* hearing."  (*Id*. at § 1070(f).) The LAPD, has the burden of proving each charge by a "preponderance of the evidence." (*Id*. § 1070(l).)  The accused officer has the right to appear in person with counsel or a

---

[1] A true and correct copy of Section 1070 of the Charter is attached to the Declaration of Benjamin Chapman as Exhibit A.

representative to defend against the charges, as well as to produce and cross-examine witnesses. (*Id*. § 1070(m).)  At the conclusion of the hearing, the Board of Rights makes a finding of guilty or not guilty on each charge, based on the evidence presented at the hearing. (*Id*. § 1070(n).)  Upon a guilty finding, the Board of Rights recommends discipline ranging from reprimand to removal. (*Id*.)  The Chief of Police may either adopt the penalty prescribed by the Board of Rights or impose a lesser penalty; he (or she) may not impose a greater penalty. (*Id*. § 1070(p); FAC, ¶ 21.)[2]

Since 1931, the Charter has required that senior LAPD police officers serve as hearing officers for Board of Rights proceedings.[3]  Under Section 1070(h) of the current Charter, the Board of Rights consists of two officers holding the rank of captain or above and one civilian. (Charter, § 1070(h); FAC, ¶ 22.)[4]  The procedure for determining the two LAPD hearing officers is:  (1) the accused officer draws four names from a basket containing the names of all officers qualified to be members of the Board of Rights (captains or above, with listed exceptions); and (2) the accused officer then selects two of the four names to be the hearing officers on the Board of Rights. (*Id*. § 1070(h).)

Plaintiff alleges that Section 1070(h) of the Charter "violates its members' due process rights." (FAC, ¶ 22.)  According to Plaintiff, due process is violated because the hearing officers "have regular contact with" the Chief of Police, who submits the charges against an accused officer to the Board of Rights. (*Id*. ¶¶ 8, 24.)  This employment relationship, "[o]n its face," allegedly creates "an inherent structural conflict of interest in the Board of Rights proceedings" that "inexorably" renders the hearing officers

---

[2] California Code of Civil Procedure § 1094.5 provides for judicial review by petition for writ of mandamus of administrative orders or decisions.  Constitutional claims may be asserted through a writ of mandamus.  *Baffert v. Cal. Horse Racing Bd*., 332 F.3d 613, 620 (9th Cir. 2003).

[3] Declaration of Benjamin Chapman, Exhibit B (1931 Charter).

[4] In 1992, Los Angeles voters overwhelmingly passed Charter Amendment F, which added a civilian member to the Board of Rights.  Leslie Berger, *Elections '92:  LAPD Disciplinary System to Undergo Restructuring*, L.A. Times, June 4, 1992, available at http://articles.latimes.com/1992-06-04/local/me-1468_1_charter-amendment.

incapable of exercising independent judgment and serving as neutral decision makers, causing them to abandon their integrity and impose the punishment sought by the Chief of Police.  (*Id.* ¶¶ 9, 25, 29, 33.)

To support its allegations, Plaintiff cites four state court lawsuits filed by LAPD officers who were hearing officers in Board of Rights proceedings.  In each complaint, the hearing officer states that he or she voted ***against*** the penalty recommended by the Chief of Police (termination):

- Exhibit 1:  "During a BOR conducted on or about August 2012, in which Plaintiff sat as a decision maker, evidence on behalf of the accused officer was brought to the attention of the BOR which was exculpatory…. At the end of the hearing, Plaintiff voted to suspend the officer instead of terminating him."  (FAC, Exh. 1, ¶ 10.)[5]

- Exhibit 2:  "Plaintiff sat as the chairperson on certain officers' Board of Rights.  At the culmination of this Board, Plaintiff did not recommend termination; rather, Plaintiff recommended a lesser penalty.  As a result, the employees at issue were not terminated."  (*Id.* Exh. 2, ¶ 17.)

- Exhibit 3:  "On one occasion, Plaintiff was picked to sit for a BOR…. The officer, who was accused of misconduct, was sent to the BOR for termination.  After listening to all of the evidence, Plaintiff and the civilian Board member, decided that the officer should be suspended instead of terminated."  (*Id.* Exh. 3, ¶ 14.)  "On a second occasion, Plaintiff was picked for a BOR for a different officer accused of misconduct.  Plaintiff found this officer was not guilty and issued a directed verdict." (*Id.* ¶ 15.)[6]

- Exhibit 4:  "On two occasions, Plaintiff was picked to sit for a BOR and did not terminate the officers that were put on trial for misconduct."  (*Id.* Exh. 4, ¶ 14.)

Based on the foregoing allegations, Plaintiff asserts eight causes of action: (1) violation of 42 U.S.C. § 1983; (2) violation of the due process clause of the Fourteenth Amendment to the United States Constitution; (3) violation of article I, § 15 of the

---

[5] This lawsuit was dismissed in 2016 after a trial in which the City prevailed.
[6] This lawsuit was voluntarily dismissed by the plaintiff.

California Constitution (due process)[7]; (4) violation of California Civil Code § 52.1; (5) declaratory judgment; (6) violation of California Government Code § 3304(b); (7) injunctive relief and penalties under California Government Code § 3309.5; and (8) writ of mandate under California Code of Civil Procedure § 1085.  On the first four causes of action, Plaintiff requests an injunction:  (1) deeming void all hearings (where the penalty sought exceeds a suspension in excess of twenty-two days) before a Board of Rights during the "pendency of this case"; (2) staying such hearings "at the conclusion of this case"; and (3) ordering a rehearing of "cases deemed void." (Prayer for Relief, ¶ 1.)  Plaintiff also seeks a declaration that Sections 1070(b)(1) and 1070(h) of the Charter are unconstitutional.  (*Id.* ¶ 2.)  Finally, Plaintiff seeks damages under California Civil Code § 52.1 and California Government Code § 3309.5.  (*Id.* ¶ 5.)

## III.   LEGAL STANDARD

Under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), district courts must engage in a two-step process when considering a motion to dismiss.  First, a court must "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679.  Those conclusory allegations are to be ignored when evaluating the sufficiency of a pleading.  *See*, *e.g.*, *Gorman v. Wells Fargo Bank*, 2015 U.S. Dist. LEXIS 54964, at *6 (C.D. Cal. Apr. 21, 2015) ("[A] court need not accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations." (quotation marks omitted)).[8]  Second, a court must determine whether the remaining "well-pleaded factual allegations … plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

---

[7] Article 1, section 15 applies to "defendant[s] in a criminal cause." (Cal. Const., art. I § 15.)  Rather, the relevant Constitutional provision is Article 1, section 7, which states that "[a] person may not be deprived of life, liberty, or property without due process of the law…." (*Id.* § 7.)

[8] This Court's Standing Order notes that the Court prefers citations to Westlaw. (Order, § 5(d).)  Unfortunately, the City only has access to Lexis.  Defendants apologize for any inconvenience caused.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face…. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (internal quotation marks and citation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[F]actual allegations must be enough to raise a right to relief above the speculative level."). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not shown--that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal quotation marks omitted). Moreover, "where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 678 (internal quotation marks omitted).

"[D]ocuments whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss. Such consideration does not convert the motion to dismiss into a motion for summary judgment." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) (quotation marks omitted).

## IV.   Argument

### A.   Plaintiff's First, Second, And Third Causes Of Action For Due Process Violations Fail As A Matter Of Law.

Plaintiff's first cause of action (FAC, ¶¶ 35-39) is asserted under 42 U.S.C. § 1983, which provides that every person who, under color of law, deprives another of rights protected by the Constitution shall be liable to that party. 42 U.S.C. § 1983. "Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994). "The first step in any such claim is to identify the specific constitutional right allegedly infringed." *Id.* Here, Plaintiff alleges that "Section 1070(h) of the Charter violates the Fourteenth Amendment Due Process rights of LAPD officers." (FAC, ¶ 37.)

Plaintiff's second cause of action alleges that Section 1070(h) of the Charter deprives its members of property without due process of the law under the Fourteenth Amendment of the United States Constitution. (*Id*. ¶ 42.)[9]  Plaintiff's third cause of action asserts the same due process claim under the California Constitution. (*Id*. ¶¶ 47-50.) "California courts have held that the due process provision of the California Constitution, Cal. Const. art I, § 7, is identical in scope and purpose to the Due Process Clause in the federal Constitution." *Nozzi v. Hous. Auth. of the City of L.A.*, 425 Fed. Appx. 539, 542 (9th Cir. 2011) (internal quotation marks omitted)[10]; *see also Calop Bus. Sys. v. City of L.A.*, 984 F. Supp. 2d 981, 994 n.22 (C.D. Cal. 2013) ("The scope of California's due process clause is commensurate with the Due Process Clause in the federal constitution.").  Plaintiff's due process claims are legally defective. And they are also directly contradicted by the facts alleged in the exhibits to the FAC.

### 1.     Plaintiff's due process claims fail as a matter of law.

"[A] fair trial in a fair tribunal is a basic requirement of due process.… This applies to administrative agencies which adjudicate as well as to courts." *Withrow*, 421 U.S. at 46 (internal quotation marks and citation omitted); *see also Morongo Band of Mission Indians v. State Water Res. Control Bd.*, 45 Cal. 4th 731, 737 (Cal. 2009) (same under California Constitution).  Plaintiff's due process claims fail as a matter of law.

*Brown v. City of Los Angeles* is directly on point.  There, a police officer filed a petition for writ of mandamus challenging the LAPD's downgrade of his pay grade.  102 Cal. App. 4th at 165.  The trial court denied the petition, finding that the LAPD's procedures for administrative appeals satisfies due process.  *Id*. at 167.  On appeal, the officer claimed that the LAPD's procedures requiring that hearing officers for

---

[9] "Plaintiff has no cause of action directly under the United States Constitution. We have previously held that a litigant complaining of a violation of a constitutional right must utilize 42 U.S.C. § 1983." *Azul-Pacifico, Inc. v. City of L.A.*, 973 F.2d 704, 705 (9th Cir. 1992).  Accordingly, the second cause of action should be dismissed.

[10] Pursuant to Federal Rules of Appellate Procedure 32.1, parties may cite unpublished decisions issued on or after January 1, 2007.

administrative appeals be selected from a pool of officers holding the rank of captain through deputy chief violated his due process rights. *Id*. at 178-79.  Under the procedures challenged in *Brown*, the accused police officer drew three names of LAPD officers holding the rank of captain through deputy chief, and then the accused officer and the LAPD representative each struck one name, leaving the remaining person as the hearing officer. *Id*. at 173.  According to the accused officer, this procedure denied him "an impartial decision maker because the hearing officers are a 'captive group of Department managers' who are presumed to have an impermissible financial interest in an outcome favorable to the Department." *Id*. at 174.[11]

The Court of Appeal held that the "procedure for selection of the hearing officer" does not violate the "principles of due process." *Id*. at 178-79.  Importantly, the Court of Appeal rejected the officer's reliance on *Haas v. Cnty. of San Bernardino*, 27 Cal. 4th 1017 (Cal. 2002), wherein the California Supreme Court found that hearing officers presiding over business license revocations who were appointed by the county on a temporary and *ad hoc* basis, and were paid according to the amount of work performed, had an impermissible financial interest in the outcome of the hearings since the hearing officer's prospects for future appointments depended on the county's goodwill and the county might prefer hearing officers whose past decisions favored the county. *Id*. at 1017. The Court of Appeal distinguished the situation in *Haas* from the LAPD's procedures, noting that in Board of Rights proceedings, "the hearing officers … are [LAPD] employees, who, like [the officer] would have the same incentives as [the officer] to perform their job duties fairly and well, and who, like [the officer], are peace officers

---

[11] Although not set forth in detail in the court's opinion, the officer's argument in *Brown* is presumably the same argument raised by the League in *L.A. Police Protective League v. City of L.A.*, 102 Cal. App. 4th 85 (Cal. App. 2d Dist. 2002), where the League claimed that "the hearing officers in the Department are a 'captive group of the Department's managers whose future financial interests are subject to considerable influence by only one party to the process, the Department.'" *Id*. at 93.  The Court of Appeal declined to consider this argument because it was not raised before the trial court. *Id*.

protected by the Public Safety Officers Procedural Bill of Rights." *Brown*, 102 Cal. App. 4th at 179.  Moreover, the Court of Appeal held that "unlike the situation in *Haas*, where the hearing officer was selected solely by the county, it is the accused officer who initially selects the three potential hearing officers from the pool of eligible hearing officers." *Id.*

Here, the procedure for selecting the hearing officers under Section 1070(h) of the City Charter is nearly identical to the procedure upheld in *Brown*.  Under Section 1070(h): (1) the eligible pool of hearing officers includes officers holding the rank of captain or above; (2) the accused officer initially draws four names of eligible LAPD officers; and (3) the accused officer then selects two of the four names to serve as hearing officers. (Charter, § 1070(h).)  Thus, *Brown* is fatal to Plaintiff's due process claim.[12]

Moreover, the United States Supreme Court, the Ninth Circuit Court of Appeals, and other federal courts have all found that the mere fact a hearing officer in an administrative proceeding is employed by the same agency that initiates the proceeding against the accused wrongdoer does not, by itself, violate due process.

As early as 1955, the Supreme Court, in *Marcello v. Bonds*, 349 U.S. 302 (1955), rejected the claim that due process was violated when a hearing officer was supervised by officials charged with investigating and prosecuting the underlying proceeding, stating:

> [T]he only complaint which petitioner can urge concerning the hearing procedures in this case is the objection that the special inquiry officer was subject to the supervision and control of officials in the Immigration Service charged with investigative and prosecuting functions.  Petitioner would have us hold that the presence of this relationship so strips the hearing of fairness and impartiality as to make the procedure violative of due process. The contention is without substance....

---

[12] Both federal and state courts, while not directly addressing the specific due process claims raised here, have generally upheld the Board of Rights hearing process against due process challenges.  *See, e.g.*, *Golt v. City of L.A.*, 214 Fed. Appx. 708, 713 (9th Cir. 2006) (affirming dismissal of due process claim because the "Board of Rights hearing process … was constitutionally adequate"); *Odoh v. City of L.A.*, 2012 Cal. App. Unpub. LEXIS 6303, at *34-35 (Cal. App. 2d Dist. Aug. 28, 2012) (holding Board of Rights hearing procedures comply with due process under the California Constitution).

*Id*. at 311.  Thus, the Supreme Court has rejected the exact claim raised by Plaintiff here—that the hearings before the Board of Rights are not, and cannot be, "fair and impartial because two-thirds of the members of the Board of Rights are controlled by and owe allegiance to a Chief of Police whose [sic] is proposing the disciplinary action under review."  (FAC, ¶ 25.)

And in *Withrow*, the Supreme Court squarely held that with respect to administrative proceedings, the combination of investigative and adjudicative functions in the same agency or department does not, by itself, violate due process.  There, the Wisconsin medical licensing board conducted investigations of licensed physicians, initiated misconduct charges, ruled on those charges at a contested hearing, and imposed punishment.  421 U.S. at 37-41.  A physician filed a lawsuit claiming that the combination of investigative and adjudicative functions within the board denied him a fair and impartial tribunal in violation of his procedural due process rights, and the district court ruled in his favor.  *Id*. at 39-42.  The Supreme Court reversed:

> The contention that the combination of investigative and adjudicative functions necessarily creates an unconstitutional risk of bias in administrative adjudication has a much more difficult burden of persuasion to carry.  It must overcome a presumption of honesty and integrity in those serving as adjudicators; and it must convince that, under a realistic appraisal of psychological tendencies and human weakness, conferring investigative and adjudicative powers on the same individuals poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented.

*Id*. at 47.  The Supreme Court also recognized that it is "very typical for the members of administrative agencies to review the results of investigations, to approve the filing of charges or formal complaints instituting enforcement proceedings, and then to participate in the ensuing hearings.  This mode of procedure … does not violate due process of law."  *Id*. at 56-57.

Although Plaintiff complains that the Chief of Police "submits the charges and his recommendation to the Board of Rights," and then other LAPD officers adjudicate the

hearings before the Board of Rights (FAC, ¶¶ 8, 26-28), this "mode of procedure" simply does not violate due process under *Withrow*.[13]  Indeed, even if the Chief of Police **himself** adjudicated the hearings before the Board of Rights, which he does not, the due process requirements set forth in *Withrow* would still be satisfied.  *See*, *e.g.*, *Silver v. United States Postal Serv.*, 951 F.2d 1033, 1041 (9th Cir. 1991) (noting under *Withrow* "the same *individuals* may serve as both investigators and adjudicators" (emphasis in original) (citing *Withrow*, 421 U.S. at 47).

Finally, in *Withrow*, the Supreme Court listed two "situations" in which "the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable":  (1) the adjudicator has a "pecuniary interest in the outcome"; or (2) the adjudicator has been the "target of personal abuse or criticism from the party before him."  421 U.S. at 47.  Neither situation is alleged here.[14]  Accordingly, Plaintiff does not meet the "difficult burden of persuasion" necessary to "overcome [the] presumption of honesty and integrity in those serving" as hearing officers in proceedings before the Board of Rights.  *Id.*

In light of the Supreme Court's opinions in *Marcello* and *Withrow*, the Ninth Circuit Court of Appeals has routinely held that due process is not violated where the hearing officer overseeing an administrative proceeding is employed by the department that either

---

[13] Similarly, Plaintiff's allegation that the Chief of Police is "intimately involved in the proceedings" because he "supervises the officers who present evidence … against officers appearing before a Board of Rights" (FAC, ¶ 26), also fails to state a claim under *Withrow*. 421 U.S. at 56-57.

[14] To the extent Plaintiff claims that the LAPD hearing officers have a pecuniary interest in the outcome of Board of Rights proceedings because they allegedly "owe their present positions and future prospects to the Chief [of Police]" (FAC, ¶ 25), this allegation does not meet the "pecuniary interest" standard under *Withrow*.  *Brown*, 102 Cal. App. 4th at 178-79; *see also Van Harken v. City of Chicago*, 103 F.3d 1346, 1352-53 (7th Cir. 1997) ("If [a hearing officer's] very indirect, very tenuous stake (a fear that if a hearing officer lets off too many alleged parking violators, the Director of Revenue may get angry and fire him) were enough to disqualify them on constitutional grounds, elected judges, who face significant pressure from the electorate to be 'tough' on crime, would be disqualified from presiding at criminal trials, especially in capital cases.  They are not.").

files the charges against the accused or prosecutes the proceedings.  *David v. City of L.A.*, 307 F.3d 1143, 1147 (9th Cir. 2002), *rev'd on other grounds*, 538 U.S. 715 (2003); *United States v. Garcia-Martinez*, 228 F.3d 956, 960-61 (9th Cir. 2000); *Silver*, 951 F.2d at 1041; *United States v. Healy Tibbitts Constr. Co*., 713 F.2d 1469, 1473-74 (9th Cir. 1983); *Spokane Cnty. Legal Servs., Inc. v. Legal Servs. Corp*., 614 F.2d 662, 667-68 (9th Cir. 1980).

For example, due process is not violated merely because the hearing officers "have regular contact with" the Chief of Police, who submits the charges against an accused officer to the Board of Rights.  (FAC, ¶ 24.)  *See*, *e.g*., *David*, 307 F.3d at 1147 (rejecting "sententiously" due process claim alleging the hearing officer and the officer who initiated the administrative proceeding worked for the same City agency); *Garcia-Martinez*, 228 F.3d at 960-61 (rejecting claim that the INS' expedited deportation proceeding violated due process because the hearing officers, "as INS enforcement employees, are inherently biased adjudicators," noting that under *Marcello* and *Withrow*, the court would not "presume bias from the mere institutional structure of the INS" (quotation marks omitted)); *Spokane Cnty. Legal Servs., Inc.*, 614 at 667-68 (affirming dismissal of due process claim alleging hearing officer "could not render an unbiased decision" because "of the close relationship of the hearing examiner by reason of his employment status with those directly involved in the dispute").

Nor is due process violated because the LAPD hearing officers "report, through their chain of command, to the Chief of Police."  (FAC, ¶ 8.)  *See*, *e.g*., *Silver*, 951 F.2d at 1041 (rejecting due process claim, holding that the "mere fact that both prosecutorial and adjudicative employees of the Postal Service serve at the pleasure of the same person is not inconsistent with due process"); *Healy Tibbitts Constr. Co*., 713 F.2d at 1473-74 (rejecting "as a matter of law" due process claim alleging hearing officer could not be impartial because he adjudicated a charge filed by his commanding officer).[15]

---

[15] *See also Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 519-20 (10th Cir. 1998) (rejecting professor's due process claim alleging hearing officers were biased because they

Nor does Plaintiff's conclusory allegation that the use of LAPD hearing officers "inexorably leads to disciplinary proceedings … which are not fair and impartial" (FAC, ¶ 25) state a due process claim.  *See*, *e.g.*, *Silver*, 951 F.2d at 1041 (holding plaintiff asserting due process claim "must overcome a presumption of honesty and integrity in those serving as adjudicators" (citing *Withrow*, 421 U.S. at 47)); *Spokane Cnty. Legal Servs., Inc.*, 614 F.2d at 668 (same).

Accordingly, while the LAPD hearing officers may "have regular contact with the Chief of Police" (FAC, ¶ 24), and report to him "through their chain of command" (*id*. ¶ 8), this employment relationship simply does not violate due process.  Accordingly, Plaintiff's due process claims fail as a matter of law, and the first, second, and third causes of action should be dismissed with prejudice.

### 2.    Plaintiff's due process claims are also directly contradicted by the facts set forth in the exhibits to the FAC.

Plaintiff conclusorily alleges that the use of LAPD hearing officers holding the rank of captain or above to adjudicate disciplinary hearings under Section 1070(h) of the Charter, "inexorably leads to disciplinary proceedings … which are not fair and impartial" because the hearing officers have no choice but to "impose the Chief's recommended punishment." (FAC, ¶¶ 9, 25.)   However, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quotation marks omitted).  Indeed,  Plaintiff's legal conclusion is directly contradicted by the four exhibits attached to the FAC, which are state court lawsuits filed by LAPD officers who served as

---

were "subordinates of the Chancellor," who had filed the written charges against the professor, since there is "no law, clearly established or otherwise, that procedural due process includes a right to … hearing officers not employed by the governmental body or agency taking the adverse action"); *Anderson v. Dolce*, 653 F. Supp. 1556, 1563-67 (S.D.N.Y. 1987) (dismissing police officer's due process claim alleging his disciplinary proceeding would "be adjudicated by a biased and partisan tribunal" where the head of the police officer's agency had the power to determine the charges that were filed, select the hearing officer (which could include the head of the agency), and render the final decision).

hearing officers in Board of Rights proceedings.  In each complaint, the hearing officer states that he or she voted ***against*** the penalty recommended by the Chief of Police (termination).  (FAC, Exh. 1, ¶ 10; Exh. 2, ¶ 17; Exh. 3, ¶¶ 14-15; Exh. 4, ¶ 14.)

Instead, the exhibits show that LAPD hearing officers are capable of serving as neutral decision-makers, conscientiously fulfilling their duty to "provide a fair and adequate hearing to all officers accused of misconduct…."  (FAC, Exh. 3 ¶ 13; Exh. 4 ¶ 13.)  It is well established that courts are "not … required to accept as true allegations that contradict exhibits attached to the Complaint." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).  Accordingly, Plaintiff's conclusory due process claims should be rejected on this basis as well.

### 3.   Plaintiff's due process challenge to Section 1070(b)(1) of the Charter is fails as a matter of law.

Section 1070(b)(1) of the Charter provides that the Chief of Police may "temporarily relieve from duty any [police officer] pending a hearing before and decision by a Board of Rights … except that a [police officer] so relieved shall not suffer a loss of compensation until 30 days after the date on which the [police officer] was served with the charge or charges."  (Charter, § 1070(b)(1).)  Plaintiff, in just a single paragraph of the FAC, and without any factual support, alleges that Section 1070(b)(1) violates due process because its enforcement "routinely—if not invariably—results in police officers who face a proposed suspension in excess of 22 days or termination being placed in all circumstances on unpaid leave prior to having any opportunity to respond to the allegations made against them."  (FAC, ¶ 44.)  This claim is specious.

An officer ***is*** given an opportunity to respond to the charges against him or her long-before he or she is placed on temporary leave without pay.  As the Los Angeles Police Department Manual makes clear, after the initial investigation into an accusation of wrongdoing against an officer, the commanding officer is required to:

- "notify the employee of the charges";

- provide the officer a "copy of all investigative material upon which the proposed disciplinary action is based"; and

- "[n]otify the employee that any response, either oral or in writing, to the proposed disciplinary action must be made within a reasonable time.  Any written response from the employee shall be attached to the completed investigative report."

(Manual, § 820.30.)[16]  Moreover, the accused officer is typically interviewed during the investigation.  (*Id*. § 820.15.)

"The court need not … accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. Cal. 2001).  Accordingly, this claim fails as a matter of law.  *Qualls v. Cook*, 245 Fed. Appx. 624, 626 (9th Cir. 2007) (affirming dismissal of due process claim based on the plaintiff's suspension without pay because "the decision to suspend [the plaintiff] without pay" was made following an "investigation" that "afforded [the plaintiff] an opportunity to be interviewed and to present his side of the story").

Moreover, Plaintiff's claim is unsupported by ***any*** factual allegations.  *See Iqbal*, 556 U.S. at 678 (holding courts "are not bound to accept as true a legal conclusion couched as a factual allegation" (quotation marks omitted)); *Twombly*, 550 U.S. at 570 (where the plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed").  For example, Plaintiff does not plead any facts setting forth how many officers are "routinely—if not invariably" placed on temporary leave for ***more than thirty days*** (after which unpaid leave would commence).  Indeed, the FAC does not identify a single police officer falling into this category.  This omission is crucial because it is well established that placement on leave "without loss of pay or rank … d[oes] not effect a deprivation of property for purposes of a 42 U.S.C. § 1983 due process claim." *Abel v. City of Algona*, 348 Fed. Appx. 313, 314 (9th Cir. 2009).  Nor does placement on paid leave create a due process right to respond to the allegations underlying

---

[16] The relevant parts of the Manual are attached to the Declaration of Benjamin Chapman, Exhibit C.

the suspension.  *See*, *e.g.*, *Dias v. Elique*, 436 F.3d 1125, 1132 (9th Cir. 2006) ("With respect to their … suspensions, [the safety officers] had no clearly-established due process right to a pre termination hearing because they were put on leave with pay.").

Further, officers who are "found not guilty" are "restor[ed] to duty without loss of pay…." (Charter, § 1070(n).)  And officers who are "restored to duty after … temporary relief from duty, or whose suspension or demotion has been overturned in whole or in part, [are] entitle[d] to receive full compensation from the City as if the nullified penal action had not been taken." (*Id*. § 1070(w).)  Plaintiff does not allege any facts demonstrating that ***any*** officers who allegedly served unpaid suspensions ultimately did not receive back pay at a later date.  And once again, Plaintiff does not identify a single police officer falling into this category.  This too is crucial because an unpaid suspension "does not constitute a deprivation of property when a post-suspension hearing results in reinstatement with back pay and benefits." *Palazzolo v. Sonne*, 2008 U.S. Dist. LEXIS 87342, at *8 (N.D. Cal. Oct. 16, 2008).

In sum, Plaintiff's due process claim based on Section 1070(b)(1) of the Charter should be dismissed.

### B.   Plaintiff's Fourth Cause of Action For Alleged Violations Of California Civil Code § 52.1 Fails As A Matter Of Law.

California Civil Code § 52.1 "authorizes an action at law, a suit in equity, or both, against anyone who interferes, or tries to do so, by threats, intimidation, or coercion, with an individual's exercise or enjoyment of rights secured by federal or state law." *Jones v. Kmart Corp.*, 17 Cal. 4th 329, 331 (Cal. 1998).  "The Legislature enacted section 52.1 to stem a tide of hate crimes." *Id*.  Plaintiff conclusorily alleges that "Defendants violated California Civil Code § 52.1, in that they interfered, including through threats, intimidation or coercion, with LAPD officers' exercise of their civil rights…." (FAC, ¶ 52.)  This claim fails as a matter of law for a number of reasons.

***First***, Section 52.1 requires that "an individual" bring an action "in his own name and on his own behalf." (Cal. Civ. Code § 52.1(b).)  Here, Plaintiff—"an employee

organization" (FAC ¶ 10)—does not, and cannot, allege that *it* (as opposed to its members) has been subjected to interference with *its* constitutional rights through threats, intimidation, or coercion.  *See*, *e.g.*, *Bay Area Rapid Transit Dist. v. Superior Court*, 38 Cal. App. 4th 141, 142-44 (Cal. App. 1st Dist. 1995) (sustaining demurrer to § 52.1 claim brought by the parents of a man killed by a BART officer, holding that since § 52.1 only allows an individual to bring an action "in his or her own name and on his or her own behalf," § 52.1 only provides for a "*personal* cause of action for the victim of a hate crime"); *id.* at 144 ("[R]ational interpretation" of § 52.1 is "that it is limited to plaintiffs who themselves have been the subject of violence or threats.").  Accordingly, Plaintiff's Section 52.1 claim should be dismissed with prejudice.  *See*, *e.g.*, *Lopez v. Cnty. of L.A.*, 2015 U.S. Dist. LEXIS 82918, at *29-30 (C.D. Cal. June 25, 2015) (dismissing § 52.1 claim where the plaintiffs themselves were not subject to interference of their own rights).

     *Second*, "[t]here are two distinct elements for a section 52.1 cause of action.  A plaintiff must show (1) intentional interference or attempted interference with a state or federal constitutional or legal right, and (2) the interference or attempted interference was by threats, intimidation or coercion."  *Allen v. City of Sacramento*, 234 Cal. App. 4th 41, 67 (Cal. App. 3d Dist. 2015).  Plaintiff cannot establish either element.

     As previously discussed (supra, Section IV-A), Plaintiff cannot establish the first element because there is no due process violation.  *See*, *e.g.*, *Campbell v. Feld Entm't, Inc.*, 75 F. Supp. 3d 1193, 1212 (N.D. Cal. 2014) ("Only if Plaintiffs can first establish that Defendants violated a constitutional or statutory right can the Court consider whether such interference was the product of threats, intimidation, or coercion.").  Nor can Plaintiff establish the second element because there is no interference accomplished by "threat, intimidation, or coercion."  (Cal. Civ. Code § 52.1(a).)  While Plaintiff does not identify the purported "threats, intimidation or coercion" supporting this claim (*e.g.*, FAC, ¶¶ 51-54), the gravamen of the FAC is that the City's enforcement of Section 1070(h) of the Charter violates due process.  (*E.g.*, *id.*, ¶ 37.)  The mere enforcement of the Charter, however, simply does not rise to the level of "threats, intimidation or

1   coercion" within the meaning of Section 52.1.  *See*, *e.g.*, *Quality Towing, Inc. v. Jackson*,

2   2016 U.S. Dist. LEXIS 25473, at *20-21 (N.D. Cal. Feb. 29, 2016) (dismissing § 52.1

3   claim based on defendant's role in rejecting plaintiff's applications to appear on a list of

4   preferred tow service providers because "administrative actions" do not "constitute

5   threat, intimidation or coercion"); *Schulte v. City of Sacramento*, 2006 U.S. Dist. LEXIS

6   4971, at *13-14 (E.D. Cal. Feb. 9, 2006) (dismissing § 52.1 claim where defendants

7   allegedly "decreased assignments, excluded [an employee] from meetings, solicited

8   negative reviews of [the employee] and demoted her," finding that such "acts do not rise

9   to the level of 'threats, intimidation, or coercion' contemplated by § 52.1").

10   Assuming *arguendo* that this claim is based on the alleged statements referred to

11   in the Exhibits to the FAC, Section 52.1 makes clear that "[s]peech alone is not sufficient

12   to support an action brought pursuant to subdivision (a) or (b), except upon a showing

13   that the speech itself threatens violence against a specific person or group of persons…."

14   (Cal. Civ. Code § 52.1(j).)  Here, Plaintiff does not allege a single statement that threatens

15   violence.  (*See*, *e.g.*, FAC, ¶ 32(b) (claiming LAPD hearing officer was told, after the

16   fact, that Chief Beck was "disappointed" in the Board of Rights' decision).)  Accordingly,

17   this claim has no merit as well.  *See*, *e.g.*, *Schaldach v. Dignity Health*, 2013 U.S. Dist.

18   LEXIS 73553, at *25-26 (E.D. Cal. May 23, 2013) (dismissing § 52.1 claim where

19   defendants allegedly "threatened" plaintiff with "termination" because such speech did

20   not threaten violence as required under § 52.1(j)).

21   ***Third***, should the court find that Plaintiff's Section 52.1 claim is cognizable, its

22   request for damages should nevertheless be dismissed.  (FAC, ¶ 53; Prayer for Relief,

23   ¶ 5.)  Plaintiff relies on "associational standing" to assert claims on behalf of its members.

24   (*Id.* ¶ 10.)  "An association has standing to bring suit on behalf of its members when:

25   (a) its members would otherwise have standing to sue in their own right; (b) the interests

26   it seeks to protect are germane to the organization's purpose; and (c) neither the claim

27   asserted nor the relief requested requires the participation of individual members in the

28   lawsuit."  *Lake Mohave Boat Owners Ass'n v. Nat'l Park Serv.*, 78 F.3d 1360, 1367 (9th

1   Cir. 1995).   Plaintiff's prayer for damages, however, fails the third test because
2   "'whatever injury may have been suffered is peculiar to the individual member
3   concerned, and both the fact and extent of injury would require individualized proof.
4   Thus, to obtain relief in damages, each member . . . who claims injury as a result of
5   respondents' practices must be a party to the suit.'"   *Id.* (quoting *Warth v. Seldin*, 422 U.S.
6   490, 511, 515-16 (1975)); *see also Bano v. Union Carbide Corp.*, 361 F.3d 696, 714 (2d
7   Cir. 2004) ("We know of no Supreme Court or federal court of appeals ruling that an
8   association has standing to pursue damages claims on behalf of its members.").
9   Accordingly, Plaintiff's prayer for damages is not cognizable and should be dismissed.
10  *See*, *e.g.*, *SEIU, Local 721 v. Cnty. of Riverside*, 2011 U.S. Dist. LEXIS 46008, at *31
11  (C.D. Cal. Apr. 27, 2011) ("[B]ecause Plaintiff seeks damages here, associational
12  standing is precluded insofar as Plaintiff alleges monetary damages.").

13  **C.    Plaintiff's Fifth Cause of Action For Declaratory Relief Fails As A**
14  **Matter Of Law.**

15          Plaintiff's fifth cause of action under 28 U.S.C. § 2201 and California Code of
16  Civil Procedure § 1060 seeks a "declaration that Section 1070(h) of the Los Angeles City
17  Charter violates the Fourteenth Amendment to the United States Constitution."  (FAC,
18  ¶ 60.)  This claim fails as a matter of law for two reasons.

19          ***First***, a claim for declaratory relief should be dismissed when it is "dependent on
20  [the plaintiff's] other failed claims."  *Gorman*, 2015 U.S. Dist. LEXIS 54964, at *20-21;
21  *see also Kassahun v. JPMorgan Chase Nat'l Corp. Servs.*, 2012 U.S. Dist. LEXIS 55976,
22  at *9-10 (C.D. Cal. Apr. 19, 2012) (dismissing declaratory relief claim under Cal. Code
23  Civ. P. § 1060 claim "[b]ecause Plaintiff's other claims are dismissed with prejudice").
24  Since Plaintiff's declaratory relief claim is dependent on its failed due process claims, it
25  too should be dismissed.

26          ***Second***, "[w]hen claims for declaratory relief are duplicative of other claims, then
27  declaratory relief is redundant and therefore unnecessary."  *Herrera v. Wells Fargo Bank*,
28  2015 U.S. Dist. LEXIS 104810, at *12 (C.D. Cal. Aug. 6, 2015); *Biederman v. Nw. Tr.*

*Servs.*, 2015 U.S. Dist. LEXIS 82221, at *14 (C.D. Cal. June 24, 2015) (same).  Here, Plaintiff's declaratory relief claim is duplicative of its first cause of action, which alleges that Section 1070(h) of the Charter violates the Fourteenth Amendment.  (FAC, ¶ 37.)  Accordingly, Plaintiff's declaratory relief claim should be dismissed on this basis as well.  *See*, *e.g.*, *Lenhoff Enters., Inc. v. United Talent Agency, Inc.*, 2015 U.S. Dist. LEXIS 150141, at *18-19 (C.D. Cal. Sept. 18, 2015) (dismissing declaratory relief claim as "duplicative because it seeks to determine the same issues as [plaintiff]'s other claims"); *Schwartz v. U.S. Bank*, 2012 U.S. Dist. LEXIS 189868, at *55-56 (C.D. Cal. Aug. 3, 2012) (dismissing declaratory relief claim under Cal. Code Civ. P. § 1060 where the "declaratory judgment claim duplicates [plaintiff]'s other causes of action").

### D.   Plaintiff's Sixth And Seventh Causes Of Action For Violations Of California Government Code § 3304(b) Are Meritless.

Plaintiff's sixth and seventh causes of action are asserted under the Public Safety Officers Procedural Bill of Rights Act (Gov't Code §§ 3300 et seq., otherwise known as "POBRA"), which "provides a catalogue of basic rights and protections which must be afforded all peace officers by the public entities which employ them." *Binkley v. City of Long Beach*, 16 Cal. App. 4th 1795, 1805 (Cal. App. 2d Dist. 1993).  Plaintiff's sixth cause of action alleges that the City violates Government Code § 3303(b), which states: "[n]o punitive action … shall be undertaken by any public agency against any public safety officer who has successfully completed the probationary period … without providing the public safety officer with an opportunity for administrative appeal."  (Gov't Code § 3304(b).)  Plaintiff alleges that Defendants violate this statute because accused officers subject to a proposed disciplinary suspension in excess of twenty two days or termination have no right to appeal the Chief of Police's decision following a hearing before the Board of Rights.  (FAC, ¶¶ 62-63.)[17]  Plaintiff misapprehends POBRA—the Board of Rights *is* the requisite administrative appeal under POBRA.

---

[17] Plaintiff's seventh cause of action seeks "sanctions" under Government Code § 3309.5 for the alleged violation of Government Code § 3304(b).  (FAC, ¶¶ 66-67.)

A "punitive action" "give[s] rise to a right of appeal under [Gov't Code] section 3304." *White v. Cnty. of Sacramento*, 31 Cal. 3d 676, 679 (Cal. 1982).  A "punitive action" is defined as "any action that ***may lead*** to dismissal, demotion, suspension, reduction in salary, written reprimand, or transfer for purposes of punishment."  (Gov't Code § 3303 (emphasis added).)  On its face, POBRA "does *not* require a showing that an adverse employment consequence has occurred or is likely to occur." *Otto v. L.A. Unified Sch. Dist.*, 89 Cal. App. 4th 985, 997 (Cal. App. 2d Dist. 2001).  Rather, "punitive action, sufficient to trigger an officer's administrative appellate rights, may exist when action is taken which *may* lead to the adverse consequences specified in [Gov't Code] section 3303 at some *future time*." *Id.* at 996.

Thus, contrary to Plaintiff's assertion that the "punitive action" occurs when the "Chief of Police implements the recommendation of a Board of Rights" (FAC, ¶ 63), the "punitive action" that triggers an administrative appeal is the Chief of Police's determination that an officer should be disciplined, as reflected in the complaint against the accused officer that "contain[s] a statement in clear and concise language of all the facts constituting the charge or charges."  (Charter, § 1070(d).)  This is so because the Chief of Police's determination that an officer should be disciplined is an action that "may lead to dismissal, demotion, suspension" within the meaning of Government Code § 3303. Thus, the subsequent hearing before the Board of Rights ***is*** the administrative appeal following the "punitive action" taken by the Chief of Police within the meaning of Government Code § 3404(b).

The California Court of Appeal has recognized that the hearing before the Board of Rights is the administrative appeal required by Government Code § 3304(b).  In *Crupi v. City of L.A.*, 219 Cal. App. 3d 1111 (Cal. App. 2d Dist. 1990), the court held:

> [T]he chief of police, in adopting the findings of the review board that the subject shooting was "out of policy," recommended that plaintiff be subjected to "administrative disapproval."  By so recommending, the chief of police initiated a process through which the matter would be adjudicated by a board

of rights pursuant to … the Los Angeles City Charter.  Thus, plaintiff *is* being afforded a right to an administrative appeal as required by section 3304.

*Id*. at 1120.  And in *Hatfield v. City of L.A.*, 2009 Cal. App. Unpub. LEXIS 8361 (Cal. App. 2d Dist. Oct. 20, 2009), the Court of Appeal affirmed the trial court's rejection of an officer's claim that the City's failure to provide an administrative appeal from a hearing before the Board of Rights violated Government Code § 3304(b), holding:

> The review by a board of rights follows an internal fact-finding investigation conducted under the aegis of the chief of the police, after which the chief determines whether the facts warrant discipline of the officer involved.  The board of rights thus fulfills an appellate review function.  That is sufficient to comply with the requirements of section 3304, subdivision (b).

*Id*. at *30-31; *see also id*. at *27 ("[T]he Board's de novo review of the determination by the chief of police that discipline was warranted satisfied the requirement for an administrative appeal as set forth in [Gov't Code] section 3304.").[18]

In addition to *Crupi* and *Hatfield*, the California Court of Appeal has also held that a hearing before the Board of Rights ***after*** the Chief of Police demotes an officer or imposes less than a 22 day suspension satisfies the requirement of an administrative appeal under Government Code § 3304(b).  *Jackson v. City of L.A.*, 69 Cal. App. 4th 769, 780 (Cal. App. 2d Dist. 1999); *Holcomb v. City of L.A.*, 210 Cal. App. 3d 1560, 1567-69 (Cal. App. 2d Dist. 1989).

In sum, the hearing before the Board of Rights is the very administrative appeal required under Government Code § 3304.  Accordingly, Plaintiff's sixth and seventh causes of action fail as a matter of law and should be dismissed with prejudice.

---

[18] Courts "may consider unpublished state decisions even though such opinions have no precedential value." *Emp'rs Ins. of Wausau v. Granite State Ins. Co.*, 330 F.3d 1214, 1220 n.8 (9th Cir. Cal. 2003); *Ducre v. Veolia Transp.*, 2011 U.S. Dist. LEXIS 158897, at *84 n.204 (C.D. Cal. Mar. 29, 2011) ("District courts may rely on unpublished state court decisions as persuasive authority.").

### E.   Plaintiff's Eighth Cause of Action Under California Code Of Civil Procedure § 1085 Fails As A Matter Of Law.

Plaintiff seeks a writ of mandamus under California Code of Civil Procedure section 1085 "to halt Defendants' violations of their duties under the Charter."  (FAC, ¶ 72.)  However, California Code of Civil Procedure section 1085 "authorizes only state courts to issue writs of mandate."  *Hill v. Cnty. of Sacramento*, 466 Fed. Appx. 577, 579 (9th Cir. Cal. 2012); *see also San Francisco Apt. Ass'n v. City & Cnty. of San Francisco*, 142 F. Supp. 3d 910, 917 n.2 (N.D. Cal. 2015) ("[Cal. Code Civ. P.] § 1085 is a 'procedural mechanism' … not a substantive claim.  Moreover, it does not apply in federal court." (internal citation omitted)); *Indep. Living Ctr. of S. Cal. v. Maxwell-Jolly*, 2015 U.S. Dist. LEXIS 89371, at *24 n.9 (C.D. Cal. July 6, 2015) ("[Cal. Code Civ. P.] section 1085 … does not apply in federal court.").  Accordingly, this claim should also be dismissed with prejudice.

### F.   All Claims Against Chief Beck Should Be Dismissed With Prejudice.

Chief Beck has been named as a defendant "solely in his official capacity."  (FAC, ¶ 12.)  "An official capacity suit against a municipal officer is equivalent to a suit against the entity….  When both a municipal officer and a local government entity are named, and the officer is named only in an official capacity, the court may dismiss the officer as a redundant defendant…."  *Ctr. for Bio-Ethical Reform, Inc. v. L.A. Cnty. Sheriff Dep't*, 533 F.3d 780, 799 (9th Cir. 2008) (affirming dismissal of Los Angeles County Sheriff as a "redundant" official-capacity defendant) (internal citations omitted); *see also Archuleta v. Cnty. of L.A.*, 2015 U.S. Dist. LEXIS 97761, at *7-8 (C.D. Cal. July 27, 2015) ("If a government entity is named as a defendant, it is not only unnecessary and redundant to name individual officers in their official capacity, but also improper….  Here, the County is a named defendant and the Sheriff is a County employee.  Accordingly, Plaintiff's claims against the Sheriff in his official capacity are defective and must be dismissed.").  Accordingly, all claims against Chief Beck should be dismissed with prejudice.

# V.   CONCLUSION

As this court has noted, "a Court does not need to grant leave to amend in cases where the Court determines that permitting a plaintiff to amend would be an exercise in futility." *Gorman*, 2015 U.S. Dist. LEXIS 54964, at *7. Here, Plaintiff's due process and accompanying state law claims are all barred as a matter of law, and there are no additional facts that can alter this determination. Accordingly, amendment "would be futile," and the FAC should be dismissed with prejudice.


Dated:  July 29, 2016                    OFFICE OF THE CITY ATTORNEY OF LOS
                                         ANGELES


                                         By:
                                             */s/ Benjamin Chapman*
                                         Benjamin Chapman

                                         Attorneys for Defendants
                                         CITY OF LOS ANGELES and CHARLES
                                         BECK