Stephen H. Silver, Bar No. 038241
    shsilver@shslaborlaw.com
Jacob Kalinski, Bar No. 233709
    jkalinski@shslaborlaw.com
**SILVER, HADDEN, SILVER & LEVINE**
1428 Second Street
Santa Monica, CA  90401
Telephone:  310.393.1486
Facsimile:   310.395.5801

Gregg McLean Adam, Bar No. 203436
    gregg@majlabor.com
Rachel D. Lev, Bar No. 254982
    rachel@majlabor.com
**MESSING ADAM & JASMINE LLP**
235 Montgomery Street, Suite 828
San Francisco, California 94104
Telephone:  415.266.1800
Facsimile:   415.266.1128

Attorneys for Plaintiff **LOS ANGELES POLICE PROTECTIVE LEAGUE**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| LOS ANGELES POLICE PROTECTIVE LEAGUE,<br><br>    Plaintiff,<br><br>    v.<br><br>CITY OF LOS ANGELES, a municipal corporation; and CHARLES BECK, in his official capacity as Chief of Police for the City of Los Angeles,<br><br>    Defendants. | Case No.  2:16-cv-03462-JFW-RAO<br><br>**PLAINTIFF LOS ANGELES POLICE PROTECTIVE LEAGUE'S OPPOSITION TO MOTION TO DISMISS**<br><br>Date:    August 29, 2016<br>Time:   1:30 p.m.<br>Ctrm:   16 – Spring St. Floor<br>Judge:  Hon. John F. Walter |

## Contents

I. Introduction ..................................................................................................... 1

    A.    The Standards Governing the City's Motion to Dismiss ............................... 3

    B.    Plaintiff's Due Process Claims Are Entitled to Proceed ................................ 4

    C.    Plaintiff's Claims Under Government Code Section 3304(b) Turn on the Determination of Whether Board of Rights Proceedings in Serious Discipline Cases are Appellate or Not ................................................................................ 7

    D.    Plaintiff's §52.1 Claims Should Be Allowed .................................................. 8

    E.    Withdrawal of Fifth and Eighth Causes of Action ....................................... 10

    F.    Plaintiff Will Amend its Complaint With Regard to Named Defendants. ... 11

**TABLE OF AUTHORITIES**

**State Cases**

*BART v. Superior Court*
   (1995) 38 Cal.App.4th 141 ........................................................................... 10

*Bostean v. Los Angeles Unified Sch. Dist.*
   (1998) 63 Cal.App.4th 95 .............................................................................. 7

*Crupi v. City of Los Angeles*
   (1990) 219 Cal.App.3d 1111 .................................................................... 7, 8

*Daniels v. Sanitarium Ass'n*
   (1963) 59 Cal.2d 602 .................................................................................. 10

*Hatfield v. City of Los Angeles*
   (2009) WL 3355334 ...................................................................................... 8

*Holcomb v. City of Los Angeles*
   (1989) 210 Cal. App. 3d 1560 ...................................................................... 8

*Int'l Assoc. of Fire Fighters v. City of Palo Alto*
   (1963) 60 Cal.2d 295 .................................................................................. 10

*Jackson v. City of Los Angeles*
   (1999) 69 Cal. App. 4th 769 ......................................................................... 8

*Meyers v. City of Fresno*
   No. 10–2359, 2011 WL 902115, at *7 ......................................................... 9

*Professional Fire Fighters v. City of Los Angeles*
   (1963) 60 Cal.2d 276 .................................................................................. 10

**Statutes**

California Civil Code
   section 52.1 .............................................................................................. 9, 10

California Code of Civil Procedure
   section 1094.5 .............................................................................................. 1

California Government Code
   section 3304(b) ................................................................................... passim

Los Angeles City Charter
   section 1070 ........................................................................................ passim

**Federal Cases**

*Ashcroft v. Iqbal*
   (2009) 556 U.S. 662 ..................................................................................... 3

*Bell Atl. Corp. v. Twombly*
   (2007) 550 U.S. 544 .................................................................................. 3, 9

*Clements v. Airport Authority of Washcoq Country*
   (9th Cir. 1995) 69 F.3d 321 ...................................................................... 3, 6

*Cleveland Board of Education v. Loudermill*
   (1985) 470 U.S. 532 ..................................................................................... 4

*Gilbert v. Homar*
   (1997) 520 U.S. 924 .................................................................................. 6, 7

*Lazy Y Ranch LTD. v. Behrens*
   (9th Cir. 2008) 546 F.3d 580 ........................................................................ 3

*Lopez v. Smith*
   (9th Cir. 2000) 203 F.3d 1122 ................................................................ 3, 10

*Marshall v. Jerrico*
   (1980) 446 U.S. 238 ..................................................................................... 6

*Sanchez v. City of Santa Ana*
   (9th Cir.1990) 915 F.2d 424 ..................................................................... 2, 6

*Stivers .v Pierce*
   (9th Cir. 1995) 71 F.3d 732 .......................................................................... 3

*Walker v. City of Berkeley*


(9th Cir. 1991) 951 F.3d 182 .................................................................................. 2, 4, 6
*Ward v. Village of Monroeville*
   (1972) 409 U.S. 57 ............................................................................................... 5
*Withrow v. Larkin*
   (1975) 421 U.S. 35 ............................................................................................... 6

**Federal Statutes**
Federal Rules of Civil Procedure
   rule 12(b)(6) ......................................................................................................... 3
Federal Rules of Civil Procedure
   rule 8(a) ................................................................................................................ 3

**Legislative History**
West Historical and Statutory Notes
   Section 1 of Stats. 2000, c. 98 (A.B.2719) ......................................................... 10

# I.

## INTRODUCTION

This lawsuit presents multiple legal questions—not the "single legal question" the City thinks. (MTD at p. 1.) Perhaps the best way to highlight the multiplicity of issues raised is to contrast the disciplinary provisions of the central focus of the case: Section 1070 of Los Angeles City Charter ("Section 1070").

Section 1070 allows the chief of police (the "Chief") to impose discipline on police officers at up to 22-days suspension. An officer suspended up to 22 days can exercise administrative appeal rights to a Board of Rights ("the Board"). The Board hears the appeal and either upholds or changes the discipline.

But Section 1070 does not authorize the chief to suspend officers for more than 22 days or terminate them. If the chief desires such an outcome, he can only *recommend* it to the Board. The Board then hears the case and *only at the conclusion of the Board hearing process* does the officer know what his or her disciplinary sanction will be. The officer has no subsequent administrative appeal from the Board ruling. An officer's only recourse is a judicial petition for writ of administrative mandamus under California Code of Civil Procedure section 1094.5.

Plaintiffs believe that Section 1070 is constitutionally and statutorily deficient in multiple ways. First, plaintiffs contend that the Board proceedings do not provide an administrative appeal from a disciplinary action as required by California Government Code section 3304(b). A *recommendation* by the chief of a lengthy suspension or termination is not a disciplinary decision because Section 1070 does not authorize the chief to impose either sanction. Only the Board of Rights can—and there is no appeal from that.

Second, even if the Board proceedings are—as the City contends (City's Motion to Dismiss, at pp. 14-15)—considered as appellate proceedings Section 1070 violates due process because it does not provide a fair and impartial hearing committee. Plaintiff's complaint is replete with allegations of undue influence by

the chief of police over the subordinate ranked officers who make up two-thirds of any Board of Rights panel.  Plaintiff is entitled to proceed with its case and seek evidence supporting its theory.

Both issues are affected by the threshold determination of whether in cases involving suspensions of greater than 22 days and terminations, the Board proceedings are considered *pre-disciplinary* hearing or *post-disciplinary* because federal and state cases apply different levels of due process protections to those distinct phases.  (See e.g., *Walker v. City of Berkeley* (9th Cir. 1991) 951 F.3d 182, 184 ["the failure to provide an impartial decisionmaker at the pretermination stage, of itself, does not create [due process] liability, *so long as the decisionmaker at the post-termination hearing is impartial*." (Emphasis added.)].)

Plaintiff's third theory turns on its allegation that officers facing suspension in excess of 22 days or termination are invariably, after 30 days, placed on unpaid leave *prior to any determination* of their guilt or innocence of the charges.  This theory also turns on whether the Board proceedings are considered *pre-disciplinary* or *post-disciplinary*.  If they are post-disciplinary, then the City's position that for officers cleared of wrongdoing all is cured by reinstatement and back pay is probably correct.  But if officers are being placed on unpaid leave before any determination has been made by the Board of Rights that they are guilty—and recall that Section 1070 authorizes the chief only to *recommend*, not impose—then plaintiff contends that it is entitled to establish that due process violations occur in most circumstances when officers are put on unpaid leave, with the accompanying loss of wages and benefits, without a prior hearing.  (*Sanchez v. City of Santa Ana* (9th Cir. 1990) 915 F.2d 424, 429 [due process generally requires "that an individual be given an opportunity for a hearing before he is deprived of any significant property interest"].)

Framed around these explanations of plaintiff's claims, we now address the City's contentions in its Motion to Dismiss.

### A. The Standards Governing the City's Motion to Dismiss

A motion to dismiss is proper under Rule 12(b)(6) only where the pleadings fail to state a claim upon which relief can be granted. The Court's "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." (*Lazy Y Ranch LTD. v. Behrens* (9th Cir. 2008) 546 F.3d 580, 588.)

Federal Rules of Civil Procedure ("FRCP") rule 8(a) requires a pleading that states a claim for relief to have a "short and plain statement of the claim showing the pleader is entitled to relief." When a party files a motion to dismiss pursuant to FRCP 12(b)(6), the responding party can survive the motion if the complaint contains "sufficient factual matter, accepted as true, to `state a claim to relief that is plausible on its face.'" (*Ashcroft v. Iqbal* (2009) 556 U.S. 662, (quoting *Bell Atl. Corp. v. Twombly* (2007) 550 U.S. 544, 570).) "Asking for plausible grounds does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of the required elements of the claims." (*Twombly, supra*, 550 U.S. at 545). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely." (*Id*. at 556.)

If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." (*Lopez v. Smith* (9th Cir. 2000) 203 F.3d 1122, 1127.)

Where a plaintiff asserted actual bias in the administrative tribunal and pointed to facts in support of her assertions, the assertions raised a material issue of fact as to the adequacy of the post-termination proceedings. (*Clements v. Airport Authority of Washcoq Country* (9th Cir. 1995) 69 F.3d 321, 334; *Stivers .v Pierce* (9th Cir. 1995) 71 F.3d 732, 742-743.)

### B.   Plaintiff's Due Process Claims Are Entitled to Proceed

The City's motion fails to acknowledge the critical distinction in due process analysis between pre-disciplinary proceedings and post-disciplinary proceedings.

In public employment, due process requires some form of hearing before significant discipline takes place followed by a full evidentiary hearing after it occurs.  (*Cleveland Board of Education v. Loudermill* (1985) 470 U.S. 532, 545-546 ("*Loudermill*").)  As explained by the Ninth Circuit Court of Appeals in *Walker v. City of Berkeley* (9th Cir. 1991) 951 F.3d 182, 184: "the failure to provide an impartial decisionmaker at the pretermination stage, of itself, does not create [due process] liability, so long as the decisionmaker at the post-termination hearing is impartial."  The City does not tackle this fundamental distinction between pre- and post- discipline hearings and consequently relies on cases that either do not involve public employees or deal exclusively with pre-disciplinary proceedings.

Much of the analysis turns on whether the Board of Rights proceedings are considered pre-disciplinary or post-disciplinary.  In disciplinary actions involving suspensions of *up to 22* days, the chief makes a decision and then the officer may appeal to the Board of Rights.  The Board in these circumstances acts as a post-discipline appellate body.  But when it hears a discipline action involving a suspension *in excess of 22* days or a termination, the Board is not reviewing a prior disciplinary decision but determining itself what discipline to impose *in the first instance*.  If the Court accepts this view, then the Board proceedings arguably fall under the lesser pre-disciplinary due process requirements described above and plaintiff's allegations of bias and a lack of a fair and impartial hearing are negated.  But if so, that still leaves Section 1070 statutorily infirm because the Board of Rights proceeding cannot be both a pre-discipline and a post-discipline proceeding.  California Government Code section 3304(b) ("section 3304(b)") requires that peace officers, such as plaintiff's members, are entitled to an administrative appeal

and, if considered the first disciplinary decision, the Board of Rights does not provide one.

The City argues that the notification of officers of the materials supporting the chief's recommendation and the opportunity to be interviewed about allegations, without any actual hearing, is sufficient to meet pre-discipline due process. Plaintiffs disagree. Section 1070 does not authorize the Chief to impose discipline on an employee for anything more than a 22-day suspension. He can only recommend a greater suspension or termination. This deprives the employee of knowing what his actual discipline will be.

Take, for example, Employee A whom the chief recommends for termination for misconduct. Employee A may be prepared to accept, say, a 30-day suspension. But the employee does not know what his discipline will be until the Board of Rights proceedings concludes. At that point, he has no administrative appeal, in violation of section 3304(b). That is distinct from a situation where Employee B is suspended for 15 days by the chief (which the chief *does* have authority to impose). Employee B knows her sanction and can weigh up whether or not she wants to exercise her appeal rights.

Even if the Court accepts the City's position that, in cases involving discipline in excess of a 22-day suspension, the investigation and assembling of the case against the employee, including the chief's recommendation, is sufficient due process, this thrusts Section 1070 into the land of constitutional infirmity on two counts.

First, as alleged in the First Amended Complaint (paragraphs 23-33), both on its face and as applied, Section 1070(h), by making a majority of the board command staff, violates plaintiff's members' right to due process. Due Process requires a hearing before an impartial tribunal. (*Ward v. Village of Monroeville* (1972) 409 U.S. 57, 59-60, 93 S.Ct. 80, 83, 34 L.Ed.2d 267.) This impartial tribunal requirement has been "jealously guarded." (*Marshall v. Jerrico* (1980) 446 U.S.

238, 241-42, 100 S.Ct. 1610, 1613, 64 L.Ed.2d 182.)  In the context of post-termination administrative proceedings, failure to provide impartial decisionmaker at the post-termination hearing constitutes constitutional error.  (*Walker v. City of Berkeley* (9th Cir.1991) 951 F.2d 182, 184; *Clements v. Airport Authority of Washoe County* (9th Cir. 1995.) 69 F.3d 321, 333.

The City relies *Withrow v. Larkin* (1975) 421 U.S. 35 for the proposition that the Los Angeles Police Department can be involved in both the investigative and adjudicatory aspects of disciplinary case.  And while plaintiff agrees that the combination of investigative and adjudicative functions in the same agency does not, standing alone, violate due process, *Withrow* recognizes that this rule "does not, of course, preclude a court from determining from the special facts and circumstances present in the case before it that the risk of unfairness is intolerably high."  (*Id*. at p. 58 – see also at p. 54 ["of course, we should be alert to the possibilities of bias that may lurk in the way particular procedures actually work in practice."].)  Especially given the allegations in four current lawsuits of the chief pressuring captains who serve on the Board of Rights (see First Amended Complaint at paragraphs 31-32), which are likely the tip of the proverbial iceberg, plaintiff is entitled to take discovery to determine the extent of any bias or partiality.

Second, employees are entitled to some type of pre-disciplinary hearing, even if not impartial, before they are subjected to discipline.  As explained above, however, the procedures in Section 1070(b)(1) allows officers who face termination to be placed on unpaid leave before any decision is made as to their guilt or innocence of the allegations.

In *Gilbert v. Homar* (1997) 520 U.S. 924, the Court had to determine whether a state employee was provided due process when he was suspended "with[out] notice and an opportunity to be heard." (*Id*. at 928.)  Although, generally Due Process requires "that an individual be given an opportunity for a hearing before he is deprive of any significant property interest" (*Sanchez, supra, at* 429) the Supreme

Court "rejected the proposition that [D]ue [P]rocess always requires the State to provide a hearing prior to the initial deprivation of property." (*Gilbert, supra* 520 U.S. 924 at 930.) "Two well-established exceptions exist: (1) where the property deprivation is the result of random and unauthorized conduct by a state employee such that meaningful pre[-]deprivation process is not possible; or (2) where protection of the public interest requires an immediate seizure of property without a hearing." (*Sanchez v. City of Santa Ana, supra*, 915 F.2d at 429, fn. 4.)[1]

Section 1070(b)(1) does not meet the *Gilbert v. Homar* factors justifying an unpaid suspension because *in all circumstances,* when the chief recommends that an officer be terminated, the employee is placed on unpaid leave after 30 days before being given the opportunity of a hearing before the Board of Rights. Courts recognize that employees have significant interests in the continued receipt of their paycheck. (*Bostean v. Los Angeles Unified Sch. Dist*. (1998) 63 Cal.App.4th 95, 113 [seven month involuntary medical leave violated due process].)

### C. Plaintiff's Claims Under Government Code Section 3304(b) Turn on the Determination of Whether Board of Rights Proceedings in Serious Discipline Cases are Appellate or Not

As explained above, plaintiff's members' statutory claims under the Public Safety Officers' Procedural Bill of Rights Act, California Government Code section 3304(b) are interwoven with its constitutional claim. If the Court agrees with plaintiff that, in situations involving discipline of greater than a 22-day suspension or termination, the chief's inability to impose discipline renders the Board of Rights proceedings the initial disciplinary decision not an appeal, then the violation of Section 3304(b) is established.

Defendants' reliance on the *Crupi v. City of Los Angeles* is misplaced. *Crupi* is distinguishable because it did not involve Board of Rights proceedings at all.

---

[1] Plaintiff will amend to allege specific examples of employees to whom this has happened if the Court believes this is necessary.

1  Rather, it concerned a Use of Force Review Board's recommendations for
2  "administrative disapproval" for an officer involved in an on-duty shooting. (*Crupi*
3  *v. City of Los Angeles* (1990) 219 Cal.App.3d 1111, 1114-1115.)  While the plaintiff
4  was challenging the procedures and seeking injunctive and declaratory relief with
5  regard to the Use of Force Board proceedings, the chief reinstated the plaintiff
6  pending the hearing before the Board of Rights.  Thus, the court did not discuss or
7  conduct a substantive analysis of the adequacy of the Board of Rights hearing under
8  3304(b), merely considering whether the plaintiff had been given an opportunity to
9  pursue an administrative appeal. (*Id*. at 1120.)

10  As Defendant acknowledges, *Holcomb v. City of Los Angeles* (1989) 210 Cal.
11  App. 3d 1560 and *Jackson v. City of Los Angeles* (1999) 69 Cal. App. 4th 769 are
12  distinguishable in that they pertain to lesser disciplines in which the Board of Rights
13  would be acting in more of an appellate function.   The focus of *Holcomb* was on the
14  appeal from a 5-day suspension, and whether the Board of Rights could impose a
15  more serious penalty than the 5-day suspension originally assigned.   Similarly,
16  *Jackson* involved a lesser discipline – an initial 5-day suspension which was later
17  increased by the board – and on the different issue of whether the plaintiff had the
18  right under the board of rights procedures to unilaterally abandon an appeal he had
19  already initiated to the board of rights.

20  *Hatfield v. City of Los Angeles*, 2009 WL 3355334, an unpublished California
21  appellate decision is non-persuasive, addressing the significant argument in a mere
22  fleeting sentence.  As established is the Adam Declaration, this issue is currently
23  pending before the California First Appellate District.  A trial court rules that parallel
24  provisions in the City and the County of San Francisco Charter violate Section
25  3304(b) by not providing for administrative appeals.

26       **D.**     **Plaintiff's §52.1 Claims Should Be Allowed**

27  As discussed herein, Plaintiff has alleged sufficient facts to demonstrate due
28  process violations under both the California and Federal Constitutions.

-8-
PLAINTIFF LOS ANGELES POLICE PROTECTIVE LEAGUE'S OPPOSITION TO MOTION TO DISMISS

As to the second element, interference or attempted interference by "threats, intimidation or coercion", Defendants mischaracterize Plaintiff's cause of action under California Civil Code, section 52.1 ("Section 52.1") as involving merely threats. But Plaintiff has asserted allegations sufficient to demonstrate intimidation and/or coercion (as opposed to threats) as those terms are defined under Section 52.1. (*Meyers v. City of Fresno*, No. 10–2359, 2011 WL 902115, at *7 (E.D.Cal. Mar. 15, 2011) (explaining that the theory of coercion requires allegations of "such force, either physical or moral," as to constrain a party to do something he would not have otherwise done.)  The FAC is replete with factual allegations illustrating the existence of intimidation and coercion to captains who have gone against the Chief's recommended actions while serving on the Board of Rights. FAC ¶¶ 27-33 and Exhibits 1 through 4 to the FAC.  The fact that so many captains felt so threatened as to seek the assistance of a court to protect their interests demonstrates the chilling effect that the Chief and his representatives have had on those serving on the Board of Rights, and thus the coercive effect on the proceedings themselves.  Thus, the case law cited by Defendants requiring speech threatening violence is irrelevant.

Moreover, Plaintiffs are entitled to discovery which will likely lead to additional admissible evidence in support of this claim, including but not limited to seeking additional details of the interactions, coercion, and intimidation imposed on these captains, as well as depositions of others who have served on the Board of Rights which reduced the recommended discipline or did not recommend termination. See *Twombly*, (2007) 550 U.S. at 545 (Facial plausibility "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of the required elements of the claims").

Defendants also argue that Section 52.1 requires an individual to bring an action in his own name and on his own behalf.   As to standing, the FAC sufficiently alleges LAPPL's associational standing, including its ability to bring claims on behalf

of its members. FAC ¶ 10. Indeed, the California Supreme Court has long held that unions have standing to bring claims on behalf of their members. (*Professional Fire Fighters v. City of Los Angeles* (1963) 60 Cal.2d 276, 284; *Int'l Assoc. of Fire Fighters v. City of Palo Alto* (1963) 60 Cal.2d 295; see also *Daniels v. Sanitarium Ass'n* (1963) 59 Cal.2d 602, 603 ["the role of the union in the present economy, and the statutory sanction of the union under certain circumstances as a bargaining representative of employees, requires a procedural accommodation to the union's ability to litigate"].)

Further, contrary to Defendants' assertion, *BART v. Superior Court* (1995) 38 Cal.App.4th 141 does not abrogate the associational standing doctrine or hold that a union cannot pursue a Section 52.1 claim on behalf of its members. The parents in *BART* suffered no direct harm and thus could not bring a Civil Rights Act claim. Unlike the parents—who sought to bring a "derivative" claim for violation of the Civil Rights Act (id. at p. 144)—LAPPL brings its claim directly on behalf of the union members whose rights were violated, i.e., for the individuals injured. (Ibid. [statute "clearly provides for a personal cause of action"]; *Professional Fire Fighters*, supra, 60 Cal.2d at p. 284 [unions' interest is "joint" with that of its members]; see also *Daniels*, supra, 59 Cal.2d at 604 fn.1 [noting "[h]istorically, the courts in dealing with unions have not entirely withheld amenability to suit and capacity to sue because of an absence of statutory authorization"]; see also West Historical and Statutory Notes: Section 1 of Stats. 2000, c. 98 (A.B.2719) [noting Section 52.1 action may be brought on behalf of another, i.e., "on whose behalf an action is brought"].) To the extent the Court accepts the City's hypertechnical argument, Plaintiff requests leave to amend to add individual plaintiffs. See *Lopez*, *supra at* 1127 (court should grant leave to amend).

### E. Withdrawal of Fifth and Eighth Causes of Action

Plaintiff withdraws, without prejudice, its Fifth Cause of Action for Declaratory Relief and its Eighth Cause of Action for Writ of Mandate

### F. Plaintiff Will Amend its Complaint With Regard to Named Defendants.

To the extent that Defendant claims that Chief Beck is a redundant defendant, Plaintiff seeks leave to amend its Complaint to name either the City or Chief Beck, in his official capacity, as defendant, or to otherwise name Chief Beck in his individual capacity.

Dated:  August 8 , 2016	SILVER, HADDEN, SILVER & LEVINE


By   */s/ Jacob Kalinski*
   Stephen H. Silver
   Jacob Kalinski

MESSING ADAM & JASMINE LLP


By   */s/ Gregg McLean Adam*
   Gregg McLean Adam
   Jennifer S. Stoughton

   Attorneys for Plaintiff-Petitioner Los Angeles Police Protective League